(Slip Opinion)     Cite as: 549 U. S. ____ (2007)     1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–9222

LONNIE LEE BURTON, PETITIONER *v.* BELINDA STEWART, SUPERINTENDENT, STAFFORD CREEK CORRECTIONS CENTER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 9, 2007]

PER CURIAM.

We granted certiorari in this case, 547 U. S. ___ (2006), to determine whether our decision in *Blakely* v. *Washington*, 542 U. S. 296 (2004), announced a new rule and, if so, whether it applies retroactively on collateral review. We do not answer these questions, however, because petitioner—a state prisoner seeking postconviction relief from the federal courts—failed to comply with the gatekeeping requirements of 28 U. S. C. §2244(b). That failure deprived the District Court of jurisdiction to hear his claims. Accordingly, we vacate the judgment of the Court of Appeals and remand with instructions to direct the District Court to dismiss petitioner's habeas corpus application for lack of jurisdiction.

I

On October 31, 1994, a Washington jury convicted petitioner Lonnie Burton of rape, robbery, and burglary. App. 3–4. The state trial court initially entered judgment and sentence on December 19, 1994 (1994 judgment). In that judgment, the court sentenced Burton to a total of 562

months in prison. *State* v. *Burton*, No. 35747–6–I etc.,
1997 WL 306429, *12 (Wash. App., June 9, 1997). The
trial court rested the 562-month sentence on two alterna-
tive grounds under Washington's determinate sentencing
scheme. First, it sentenced Burton to within-guidelines
sentences for each offense—153 months for robbery, 105
months for burglary, and 304 months for rape—and di-
rected that the sentences be served consecutively, for a
total term of 562 months. *Id.*, at *13. Under Washing-
ton's "multiple offense policy," imposition of consecutive
sentences constitutes an "exceptional" sentence, Wash.
Rev. Code §§9.94A.120(18), 9.94A.400(1)(a) (2000),[1] but
the trial court justified such a sentence on the ground that
running the three terms concurrently would result in a
sentence "clearly too lenient" in light of the purposes of
Washington's sentencing scheme. See §9.94A.390(2)(i).[2]
The second basis on which the court calculated a 562-
month term was by running the sentences concurrently
but imposing an exceptional sentence of 562 months solely
for the rape conviction—again on the ground that the total
sentence would otherwise be "clearly too lenient." *State* v.
*Burton*, 1997 WL 306429, at *13.

   After an unrelated prior conviction was overturned,
Burton requested resentencing. Accordingly, over a year
after the 1994 judgment, the trial court entered an
amended judgment and sentence (1996 judgment), which,
after recalculating Burton's offender scores, imposed a
new sentence that relied solely on an exceptional 562-
month sentence for the rape conviction, run concurrently

———————

[1] As we noted in *Blakely* v. *Washington*, 542 U. S. 296, 298, n. 1
(2004), Washington has since amended and recodified its criminal code.
Citations are to provisions in effect at the time of Burton's sentencing.

[2] Specifically, the standard range sentences for rape, robbery, and
burglary, if run concurrently, would have punished Burton as if he had
committed only the rape. *State* v. *Burton*, No. 35747–6–I etc., 1997 WL
306429, *11–*12 (Wash. App., June 9, 1997).

with the other two terms. *Ibid.;* App. 45. On direct review, the Washington Court of Appeals upheld Burton's conviction, *State* v. *Burton, supra*, a decision the Washington Supreme Court declined to review, *State* v. *Burton*, 133 Wash. 2d 1025, 950 P. 2d 475 (1997), cert. denied, 523 U. S. 1082 (1998). The State Court of Appeals remanded for resentencing, however, because the trial court's exclusive reliance on the exceptional rape sentence decreased Burton's potential early release credits, raising vindictiveness concerns. *State* v. *Burton*, 1997 WL 306429, at *14.

In response, on March 16, 1998, the trial court entered a second amended judgment and sentence (1998 judgment). App. 3. In this judgment, the trial court recited the jury's 1994 guilty verdicts, *id.,* at 3–4, and again imposed a 562-month sentence, reverting to its original basis for doing so—running the three within-guidelines sentences consecutively. *Id.,* at 7, 29–32. Burton sought review of this sentence, but the Washington courts eventually rejected his challenges both on direct review and in state postconviction proceedings. *Id.,* at 43–55; App. to Brief for Petitioner 1a–4a.

On December 28, 1998, while state review of his sentence was still pending, Burton filed a petition under 28 U. S. C. §2254 for a writ of habeas corpus in the United States District Court for the Western District of Washington (1998 petition). App. 34. The standard form he filled out warned applicants that they must "ordinarily first exhaust . . . available state court remedies as to each ground on which" they sought "action by the federal court," or run the risk of being "barred from presenting additional grounds at a later date." *Id.,* at 37–38. Burton nonetheless challenged his custody only by disputing the constitutionality of his three convictions, not by pressing any sentencing claims. Where the form requested the "[d]ate of judgment of conviction," Burton listed "Dec. 16, 1994," corresponding roughly to the date of the 1994

judgment. *Id.,* at 34. The form asked whether the applicant had "any petition or appeal now pending in any court, either state or federal, *as to the judgment under attack,*" to which Burton answered "Yes," explaining that "[the] sentence I received at resentencing is on direct appeal." *Id.,* at 40 (emphasis added). The District Court denied relief, *id.,* at 42, and the United States Court of Appeals for the Ninth Circuit affirmed, *Burton* v. *Walter*, 21 Fed. Appx. 632 (2001), cert. denied, 535 U. S. 1060 (2002).

Over three years subsequent to filing the 1998 petition, after the Washington courts had rejected his sentencing challenges, Burton filed another federal habeas petition (2002 petition), again in the Western District of Washington. This time, Burton claimed to be contesting the 1998 judgment, and challenged only the constitutionality of his sentence. In particular, he alleged that it violated our decision in *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), to the extent the sentencing court departed from a standard sentence based on its own factual determinations. The District Court again denied the petition, App. 77, and the Ninth Circuit again affirmed, *Burton* v. *Waddington*, 142 Fed. Appx. 297 (2005). Both courts rejected the State's contention that the District Court lacked jurisdiction to entertain the petition because Burton had not obtained an order from the Court of Appeals authorizing him to file a "second or successive" habeas petition, as required by the habeas gatekeeping provisions, 28 U. S. C. §2244(b)(3). On the merits, the Ninth Circuit rejected Burton's *Apprendi* claim and agreed with the State that Burton could not benefit from *Blakely* v. *Washington*, 542 U. S. 296, because that decision announced a new rule that did not apply retroactively to Burton's sentence. 142 Fed. Appx., at 299.

It is this petition, the 2002 petition, that is before us today. We conclude, though, that because the 2002 petition is a "second or successive" petition that Burton did

not seek or obtain authorization to file in the District Court, the District Court never had jurisdiction to consider it in the first place.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a stringent set of procedures that a prisoner "in custody pursuant to the judgment of a State court," 28 U. S. C. §2254(a), must follow if he wishes to file a "second or successive" habeas corpus application challenging that custody, §2244(b)(1). In pertinent part, before filing the application in the district court, a prisoner "shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." §2244(b)(3)(A). A three-judge panel of the court of appeals may authorize the filing of the second or successive application only if it presents a claim not previously raised that satisfies one of the two grounds articulated in §2244(b)(2). §2244(b)(3)(C); *Gonzalez* v. *Crosby*, 545 U. S. 524, 529–530 (2005); see also *Felker* v. *Turpin*, 518 U. S. 651, 656–657, 664 (1996).

Burton's 2002 petition was a "second or successive" habeas application for which he did not seek, much less obtain, authorization to file. When Burton filed his first petition, the 1998 petition, he was being held in custody pursuant to the 1998 judgment, which had been entered some nine months earlier. When he filed his second petition, the 2002 petition, he was still being held in custody pursuant to the same 1998 judgment. In short, Burton twice brought claims contesting the same custody imposed by the same judgment of a state court. As a result, under AEDPA, he was required to receive authorization from the Court of Appeals before filing his second challenge. Because he did not do so, the District Court was without jurisdiction to entertain it.

The Ninth Circuit determined that the 2002 petition

was not "second or successive" because, under *McCleskey*
v. *Zant*, 499 U. S. 467 (1991), Burton had a "legitimate
excuse for failing to raise" his sentencing challenges in the
1998 petition. 142 Fed. Appx., at 299 (quoting *McCleskey*,
*supra*, at 490; internal quotation marks omitted). Specifi-
cally, the Ninth Circuit reasoned that because Burton had
not exhausted his sentencing claims in state court when
he filed the 1998 petition, "they were not ripe for federal
habeas review" at that time. 142 Fed. Appx., at 298.

We assume for purposes of this case, without deciding,
that the Ninth Circuit's "legitimate excuse" approach to
determining whether a petition is "second or successive" is
correct. That court's ruling that Burton had a "legitimate
excuse," however, is inconsistent with the precise practice
we have explained governs in circumstances such as Bur-
ton's. The plurality opinion in *Rose* v. *Lundy*, 455 U. S.
509, 520–522 (1982), stated that district courts should
dismiss "mixed petitions"—those with exhausted and
unexhausted claims—and that petitioners with such
petitions have two options. They may withdraw a mixed
petition, exhaust the remaining claims, and return to
district court with a fully exhausted petition. We have
held that in such circumstances the later filed petition
would not be "second or successive." *Slack* v. *McDaniel*,
529 U. S. 473, 485–486 (2000).

Alternatively, prisoners filing mixed petitions may
proceed with only the exhausted claims, but doing so risks
subjecting later petitions that raise new claims to rigorous
procedural obstacles. *Lundy*, *supra*, at 520–521 (plurality
opinion); see also *Slack*, *supra*, at 486–487. As noted, the
form Burton used in filing his first petition warned of just
that consequence. App. 37–38, *supra,* at 3. There is no
basis in our cases for supposing, as the Ninth Circuit did,
that a petitioner with unexhausted claims who chooses the
second of these options—who elects to proceed to adjudica-
tion of his exhausted claims—may later assert that a

subsequent petition is not "second or successive" precisely because his new claims were unexhausted at the time he filed his first petition. This reasoning conflicts with both *Lundy* and §2244(b) and would allow prisoners to file separate habeas petitions in the not uncommon situation where a conviction is upheld but a sentence is reversed. Such a result would be inconsistent with both the exhaustion requirement, with its purpose of reducing "piecemeal litigation," *Duncan* v. *Walker*, 533 U. S. 167, 180 (2001), and AEDPA, with its goal of "streamlining federal habeas proceedings." *Rhines* v. *Weber*, 544 U. S. 269, 277 (2005).

Burton directs us to two decisions, *Stewart* v. *Martinez-Villareal*, 523 U. S. 637 (1998), and *Slack, supra*, in which we have not regarded subsequent petitions to be "second or successive." But these cases are readily distinguishable. In *Martinez-Villareal*, we held that the claim of a capital prisoner that he was insane and therefore could not be put to death was necessarily unripe until the State issued a warrant for his execution, and so the prisoner's subsequent request for consideration of that previously unripe claim was not "second or successive" for purposes of §2244(b). 523 U. S., at 644–645. But unlike Burton, the prisoner there had attempted to bring this claim in his initial habeas petition, prompting us to look to *Lundy* in concluding that the claim "should be treated in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies," that is, characterizing it as not "second or successive." *Martinez-Villareal,* 523 U. S., at 644. Indeed, we expressly declined to address the situation where a petitioner fails to raise the claim in the initial petition. See *id.*, at 645, n. In this case, Burton did not raise the relevant claims in his 1998 petition. Without more, therefore, our holding in *Martinez-Villareal* does not support the conclusion that Burton's 2002 petition was not "second or successive."

*Slack* is equally unhelpful to Burton; that decision

merely confirmed that when a "first" petition is dismissed because it contains unexhausted claims, a prisoner returning later with a fully exhausted petition would not confront the "second or successive" bar. 529 U. S., at 485–486. We held that a "petition filed after a mixed petition has been dismissed under *Rose* v. *Lundy before the district court adjudicated any claims* is to be treated as 'any other first petition' and is not a second or successive petition." *Id.*, at 487 (emphasis added). See also *id.*, at 478 ("[A] habeas petition which is filed after an initial petition was dismissed *without adjudication on the merits* for failure to exhaust state remedies is not a 'second or successive' petition" (emphasis added)). Burton's case is quite different—his first petition was not subject to dismissal as containing unexhausted claims, and in fact was adjudicated on the merits.

Moving beyond the ground relied upon by the Ninth Circuit, Burton argues that his 1998 and 2002 petitions challenged different judgments. He notes that his 1998 petition identified the pertinent judgment as the 1994 judgment, App. 34, while the 2002 petition challenged the sentence imposed in the 1998 judgment. The 1998 judgment, however, had been entered nine months before Burton filed his first petition. That judgment, the same one challenged in the subsequent 2002 petition, was the judgment pursuant to which Burton was being detained. Unlike *In re Taylor*, 171 F. 3d 185 (CA4 1999), cited by Burton, there was no new judgment intervening between the two habeas petitions. In his 1998 petition, Burton specifically described his unexhausted sentencing claims as claims "as to the judgment under attack," App. 40, belying any notion that those claims arose from a judgment distinct from the one challenged in 1998.[3]

_____

[3] For the same reasons, Burton's reliance on *Castro* v. *United States*, 540 U. S. 375 (2003), is misplaced. That case reversed a lower court's

Per Curiam

Burton finally contends that had he not filed the 1998 petition when he did, and instead waited until state review of his sentencing claims was complete, he risked losing the opportunity to challenge his conviction in federal court due to AEDPA's 1-year statute of limitations. See §2244(d)(1).  But this argument misreads AEDPA, which states that the limitations period applicable to "a person in custody pursuant to the judgment of a State court" shall run from, as relevant here, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  §2244(d)(1)(A).  "Final judgment in a criminal case means sentence.  The sentence is the judgment." *Berman* v. *United States*, 302 U. S. 211, 212 (1937).  Accordingly, Burton's limitations period did not begin until both his conviction *and* sentence "became final by the conclusion of direct review or the expiration of the time for seeking such review"—which occurred well *after* Burton filed his 1998 petition.

Burton argues in rebuttal that this reasoning would necessarily mean the District Court lacked jurisdiction to consider the 1998 petition, but he is mistaken.  Section 2254(a) states that a district court "shall entertain" a habeas petition "in behalf of a person in custody pursuant to the judgment of a State court."  When he filed the 1998 petition, Burton assuredly was "in custody pursuant to the judgment of a State court"—even if, at that point, the 1998 judgment was not final for purposes of triggering AEDPA's statute of limitations.

The long and short of it is that Burton neither sought

———————

recharacterization of a motion requesting a new trial pursuant to Federal Rule of Criminal Procedure 33 as a first habeas petition.  Here Burton filed his first habeas petition as such in 1998; it involves no similar "recharacterization" to recognize that the judgment pursuant to which Burton was confined at the time was the same judgment that gave rise to the sentence later challenged in his second habeas petition.

Per Curiam

nor received authorization from the Court of Appeals before filing his 2002 petition, a "second or successive" petition challenging his custody, and so the District Court was without jurisdiction to entertain it. The judgment of the Court of Appeals for the Ninth Circuit is therefore vacated, and the case is remanded with instructions to direct the District Court to dismiss the habeas petition for lack of jurisdiction.

*It is so ordered.*