**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

           v.

GABRIELE ELIZABETH LOPEZ, aka
Gabriele Elizabeth Koenig, Nee
Konig,
           *Defendant-Appellant.*

No. 07-35389

D.C. Nos.
CV-05-00084-JLQ
CR-02-00127-JLQ

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, District Judge, Presiding

Argued and Submitted
April 8, 2008—Seattle, Washington

Filed July 16, 2008
Amended July 29, 2008

Before: Raymond C. Fisher, Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Fisher

9587

**COUNSEL**

James A. McDevitt, United States Attorney; Stephanie Whitaker (argued), Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Beth Mary Bollinger, Spokane, Washington, for the defendant-appellant.

---

## ORDER

The opinion filed July 16, 2008, is amended as follows:

At Slip Op. 8785, line 34: Change "Counsel for one of the co-defendants told . . ." to "Frank Cikutovich, counsel for one of the co-defendants, told . . ." .

At Slip Op. 8786, line 24: Change "Bailey to Agent Rice or . . ." to "Bailey to Rice or . . ." .

At Slip Op. 8792 [4], line 1: Amend to read "In this case, because Lopez cannot carry the lesser burden of establishing a *Brady* violation that would entitle Lopez to habeas relief, had this been Lopez's first habeas petition, she cannot carry the greater burden . . ." .

At Slip Op. 8794 [6], line 4: Amend to read " . . . Lopez has not established the existence of such a *Brady* violation that warrants habeas relief, had this been Lopez's first habeas petition.".

---

## OPINION

FISHER, Circuit Judge:

Gabriele Lopez, a.k.a. Gabriele Koenig ("Lopez"), filed a federal habeas corpus motion in the district court seeking to vacate her drug conviction because the government withheld until long after her trial potentially damaging credibility information about one of the government's principal witnesses, in violation of the government's disclosure obligations under

*Brady v. Maryland*, 373 U.S. 83 (1963). The district court, rejecting the government's argument that the court lacked jurisdiction to hear the motion because it was barred by 28 U.S.C. § 2255 as "second or successive," denied the motion on its merits. The appeal in this case thus presents a troublesome circumstance involving the interplay between the government's failure to make a timely disclosure of *Brady* information and the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2244, 2255, which, in the interest of finality, impose significant burdens on defendants who try to raise claims that were not originally raised on their direct appeal or first habeas motion.[1]

For the reasons that follow, we hold that Lopez's motion was a second or successive habeas motion that, under § 2255(h), required certification from this court before it could be heard by the district court. Therefore, the district court erred in reaching the merits because it lacked jurisdiction. Even though under the circumstances here we construe Lopez's appeal as a belated request to us for authorization to file her motion, we must deny certification because the newly discovered evidence would not be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found her guilty of the offense. *See* § 2255(h)(1). We also conclude that the government's conduct, albeit troublesome, was not "so grossly shocking and so outrageous as to violate the universal sense of justice," *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (internal quotation marks and citations omitted), that her conviction must be vacated and the indictment dismissed.

## I.

Lopez was indicted in May 2002 on several charges of possession of cocaine base with intent to distribute. She was tried

---

[1]Hereinafter all statutory provisions cited, unless otherwise indicated, refer to Title 28 of the United States Code.

together with Elvis Singh and James Evans, with whom she lived in a house in Spokane, Washington. Two informants, David Palmer ("Palmer") — who emerges as the central figure in this appeal — and Janie Arambula ("Arambula"), testified on behalf of the government.

Palmer testified about an occasion on April 9, 2002, when he went to the defendants' house in Spokane to buy crack cocaine with two other participants. The jury heard Palmer's recorded conversations with these participants regarding their drug purchase inside the house. Palmer testified that he did not see Lopez on that occasion and had never met her at any other time. Defense counsel cross-examined Palmer about a variety of issues, such as whether he had used or presently used drugs and the payment for his work as an informant.

During the trial, a case agent testified that he had taken Palmer's Drug Enforcement Administration ("DEA") file to the United States Attorney's Office and that Assistant United States Attorney Tom Rice ("Rice") had spoken with Agent Shelby Smith ("Agent Smith") of the local DEA. The case agent further testified that Rice had written a note to one of the government's trial attorneys that there was no *Brady* material in the file. Frank Cikutovich, counsel for one of the co-defendants, told the court he was concerned about whether the government had disclosed all *Brady* material about Palmer and requested that the court review Palmer's file for *Brady* material. The court declined, saying it was the responsibility of the United States Attorney's Office, not the court, to do so.

As Lopez learned several years later, on June 6, 2002 — two months before her trial — Lieutenant Chandler Bailey ("Lt. Bailey") of the Spokane Police Department Drug Task Force had called Agent Smith to tell him that the City and County of Spokane would no longer be using Palmer as a confidential source in controlled drug buys because he was "unreliable." Lt. Bailey had learned that Palmer had been sexually involved with at least one woman who was the subject

of a drug investigation conducted by the Spokane Police Department, that some officers believed Palmer had used investigative funds to buy services from prostitutes and that Palmer usually sought out women when he chose his own targets for investigation. Although Lt. Bailey had prepared a memorandum discussing the allegations that Palmer was "unreliable" (the "Bailey memorandum"), he had not sent a copy to Agent Smith and the memorandum was not in the file at the time Rice inspected it. There is no evidence that Agent Smith relayed the information from the conversation he had with Lt. Bailey to Rice or Assistant United States Attorney Earl Hicks, who was then in charge of the prosecution of Lopez and her co-defendants. Nor is there evidence that the government attorneys involved in the cases asked the pertinent government agents whether they had any personal knowledge concerning the credibility of the government witnesses, or any other *Brady* information, as opposed to merely looking in Palmer's file.

The defense completed its cross-examination of Palmer without being informed that the City and County of Spokane were no longer using Palmer because he was considered unreliable. Palmer's testimony did not directly inculpate Lopez in any drug transaction, and at the close of evidence the court instructed the jury that the testimony of an informant should be examined with greater care than the testimony of an unpaid witness.

Another informant, Arambula, testified about a wire-recorded controlled purchase of cocaine base she made on April 18, 2002 from Lopez's co-defendant Singh, in which Lopez participated. This was not the controlled purchase about which Palmer testified. Arambula's testimony was that she placed a consensually monitored and recorded telephone call to Singh to arrange to purchase a half ounce of crack cocaine. When she arrived at the house, Lopez answered the door and led her to a bedroom where Singh was on the bed. Arambula asked to buy a half ounce of crack cocaine, she and

Singh discussed the price, and then Lopez retrieved and weighed the crack cocaine for Arambula. Lopez gave her the crack cocaine, and Arambula then laid the money on Singh's chest. Agent Beaumont testified about this transaction, explaining that he was with Arambula during her telephone call with Singh and that he conducted surveillance during the controlled purchase. The tape of the telephone call and the transmitter wire recording of the controlled buy were admitted into evidence and played for the jury.

The jury found the defendants guilty of the cocaine base charges. Specifically, the jury found Lopez guilty of two counts of violation of 21 U.S.C. § 841(a)(1) (Count 5 — knowingly and unlawfully distributing a mixture or substance containing more than five grams of cocaine base; and Count 6 — knowingly and unlawfully possessing with intent to distribute a mixture or substance containing more than 50 grams of cocaine base).

The district court acquitted Lopez on Count 6, finding insufficient evidence. It found, however, there was clear and convincing evidence to support the jury verdict on Count 5. The court sentenced Lopez to the mandatory minimum term of five years. On Lopez's direct appeal, we affirmed her conviction and sentence in an unpublished disposition. *See United States v. Singh*, 94 F. App'x 511, 514 (9th Cir. 2004).

In March 2005, Lopez filed her first motion to set aside, vacate or correct her sentence under § 2255, claiming ineffective assistance of counsel, a violation of her Sixth Amendment right to an impartial jury, a due process violation and a sentence in violation of *United States v. Booker*, 543 U.S. 220 (2005). The district court denied the motion.

Then, in 2006, the new *Brady* information regarding Palmer came to light in a different case, *United States v. Heit*, E. D. Wash. No. CR-05-6028-EFS, in which Palmer was an informant-witness for the government. Upon learning about

the Bailey memorandum and its negative information about Palmer, the government's counsel in *Heit* disclosed it to the defense counsel in that case, who in turn disclosed it to Lopez's counsel and her co-defendants' counsel. At some time during the prosecution of the *Heit* case, the Bailey memorandum was put in Palmer's file.

Meanwhile, the district court in *Heit* held extensive pretrial evidentiary hearings on the defendant's motion to dismiss based on the government's alleged outrageous behavior in using Palmer as a confidential informant. Although the court recognized that "Palmer's testimony [was] critical to the Government as he [was] the only 'government agent' to have personally talked with [the defendant]," it nevertheless denied Heit's motion and precluded her from introducing evidence about uncharged allegations of Palmer's sexual misconduct and being "black balled" by government agencies. The court found that any relevance the alleged sexual incidents might have had regarding Palmer's credibility or motives was substantially outweighed by their prejudicial value, especially in light of other information Heit could utilize to impeach Palmer.

In the case before us, Lopez filed her § 2255 motion in the district court in November 2006 to vacate her conviction and dismiss the indictment with prejudice, based on the government's alleged outrageous behavior in failing to furnish damaging impeachment information concerning Palmer as required under *Brady*. Rejecting the government's argument that Lopez's motion was an impermissible second or successive motion that had not been certified for filing by this court as required by § 2255(h), the district court denied her motion on the merits, finding that the impeachment evidence would not have materially affected the guilty verdict on Count 5. This appeal followed.

## II.

"We review de novo a district court's determination that a habeas petition is 'second or successive' for purposes of

[AEDPA]." *Henderson v. Lampert*, 396 F.3d 1049, 1052 (9th Cir. 2005).

Whether a habeas application is deemed second or successive can be critical because "AEDPA greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications." *Cooper v. Calderon*, 274 F.3d 1270, 1272-73 (9th Cir. 2001) (per curiam) (internal quotation marks omitted). "AEDPA does not define the terms 'second or successive.'" *Henderson*, 396 F.3d at 1053 (quoting *Hill v. Alaska*, 297 F.3d 895, 897 (9th Cir. 2002)) (internal quotation marks omitted). Section 2244(a) provides:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, *except as provided in section 2255.*

§ 2244(a) (emphasis added).

**[1]** Section 2255(h) in turn requires that a second or successive habeas application be certified by a panel of the appropriate court of appeals to satisfy at least one of two conditions before it may be filed in the district court — specifically, that it is based on:

> (1)  newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

§ 2255(h). Thus, if a petitioner seeks to assert a claim that was not presented in her first habeas application, she must move for authorization from this court to file a second or successive application, and the motion will be denied unless it makes a prima facie showing that it satisfies the requirements of one of these narrow exceptions. *See Cooper*, 274 F.3d at 1273; § 2255(h); § 2244(a), (b)(3). If the petitioner does not first obtain our authorization under § 2244(b)(3)(A), the district court lacks jurisdiction to consider the second or successive application. *See Burton v. Stewart*, 549 U.S. 147, 127 S. Ct. 793, 796 (2007) (per curiam).

Lopez argues that although she previously filed a § 2255 motion, her present motion is not second or successive because she could not have discovered the *Brady* claim until after her first habeas motion had already been denied. The district court agreed with her argument and proceeded to decide the motion on its merits. Although we understand the district court's reluctance to find Lopez's motion barred as second or successive when it was the government's conduct that created the problem, we conclude that the court erred in not doing so.

**[2]** That Lopez did not have the information to formulate her *Brady* claim until after her first habeas motion was denied does not exempt her from fulfilling the prerequisites for a second or successive application that Congress has established by the plain language of § 2255. *See Evans v. Smith*, 220 F.3d 306, 322-25 (4th Cir. 2000). We therefore hold that Lopez was required by § 2255(h) to move in this court for an order authorizing the district court to consider her application, because she had previously filed a § 2255 motion that was fully adjudicated on the merits. *See Cooper*, 274 F.3d at 1274. In light of Lopez's failure to do so, the district court lacked

jurisdiction and should not have considered her motion on the merits.

## III.

**[3]** Nonetheless, like the district court, given the circumstances of this case we are not inclined to allow the government in effect to profit from its failure to meet its obligations under *Brady*. We therefore construe Lopez's appeal as a request that we authorize her to file a second or successive habeas application. *See Cooper*, 274 F.3d at 1275; *see also Libby v. Magnusson*, 177 F.3d 43, 46 (1st Cir. 1999) ("[N]o useful purpose would be served by forcing the petitioner to retreat to square one and wend his way anew through the jurisdictional maze."); *Felker v. Turpin*, 101 F.3d 657, 661-62 (11th Cir. 1996) (per curiam). We must deny her request, however, because her claim does not fall within the § 2255(h)(1) or (2) exceptions.

Lopez's *Brady* claim obviously does not rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by § 2255(h)(2). Rather she must make a prima facie showing that she meets the requirements of § 2255(h)(1) by demonstrating "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." It is undisputed that the evidence was newly discovered, having been revealed to Lopez only after her first habeas motion was denied. The question is whether the negative information about Palmer would, if proved, be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found Lopez guilty of the offense when viewed in light of the evidence as a whole. *See* § 2255(h)(1).

**[4]** In this case, because Lopez cannot carry the lesser burden of establishing a *Brady* violation that would entitle Lopez to habeas relief, had this been Lopez's first habeas petition, she cannot carry the greater burden of making a prima facie case that no reasonable factfinder would have found Lopez guilty of the offense had the negative information about Palmer been proven. In determining whether there has been a *Brady* violation, we consider whether the suppressed evidence was: (1) favorable to the accused, (2) suppressed by the government and (3) "material to the guilt or innocence of the defendant." *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc). Here there is no issue as to the first two prongs, so we look to the materiality of the withheld evidence in determining whether withheld *Brady* material was prejudicial. *See Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006). A *Brady* violation is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 434-36 (1995). "A 'reasonable probability' of a different result [exists] when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). The materiality of suppressed evidence is considered "collectively" and if materiality is established, no further harmless error analysis is necessary. *Id.* at 436.[2]

The government argues that the Bailey memorandum characterizing Palmer as "unreliable" is not material because it involved inadmissible impeachment evidence. The govern-

---

[2]Habeas relief is usually warranted only if the alleged constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). Certain types of claims are analyzed under their own harmless error standards, however, which makes *Brecht* analysis unnecessary. *See, e.g.*, *Kyles*, 514 U.S. at 435; *see also Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008).

ment also argues that even without the Bailey memorandum, the defense was nevertheless able to cross-examine Palmer extensively on impeachment and credibility issues, because they were aware of a past conviction of Palmer's and that Palmer had been working with other law enforcement agencies. The government also notes that the district court instructed the jury that the testimony of an informant should be examined more carefully than that of a person not paid for his testimony.

Lopez argues that even though Palmer did not directly testify against her, the evidence was still material to her case because of the "spillover" effect of his testimony about her co-defendants. Lopez also argues that others' testimony directly implicating her was subject to doubt because of Arambula's admitted drug use.

**[5]** We are not persuaded there is a reasonable probability that, had the Palmer evidence been disclosed to the defense, the result of the trial would have been different. First, assuming the defense was allowed to use the information to impeach Palmer, his testimony did not directly inculpate Lopez.[3] He did not testify about Lopez at all or about the drug transaction at issue in Count 5. Thus the weight given his testimony would not likely have affected the verdict against Lopez regardless of whether he was impeached as thoroughly as possible or not. Second, the district court allowed extensive cross-examination of Palmer that gave the jury information to appraise his credibility and motivations. Third, even if there was some kind of spillover effect as Lopez asserts, there was strong evidence against Lopez on Count 5 in addition to Arambula's testimony, including the tape the jury heard recording Lopez's participation in the April 18, 2002 drug transaction, supported by Agent Beaumont's testimony. Con-

---

[3]As the *Heit* case illustrates, the Bailey memorandum or its contents might not have been allowed as impeachment evidence even if the government had disclosed the Palmer information to defense counsel before trial.

sequently, although the prosecution erred in failing to disclose the adverse information about Palmer during Lopez's trial, that alone does not undermine our confidence in the outcome of the trial.

**[6]** Because Lopez has not shown that "admission of the suppressed evidence would have created a reasonable probability of a different result," *Jernigan*, 492 F.3d at 1053 (internal quotation marks omitted), Lopez has not established the existence of such a *Brady* violation that warrants habeas relief, had this been Lopez's first habeas petition. Therefore, Lopez cannot meet the higher threshold required by § 2255(h)(1) of showing that the *Brady* material, "if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." We therefore decline to certify her request for authorization to file a second or successive habeas application.

## IV.

Finally, Lopez argues that the government's conduct in failing to disclose the Palmer information was "so grossly shocking and so outrageous as to violate the universal sense of justice," *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (internal quotation marks and citations omitted), thus violating due process and warranting outright dismissal of the indictment, *see United States v. Kojayan*, 8 F.3d 1315, 1324-25 (9th Cir. 1993). We have already expressed our concerns about the government's failure to discover and disclose the information in a timely fashion, but the circumstances certainly do not rise to the level of outrageousness. There is no evidence that the government wilfully withheld the *Brady* material, lied about such material or was unwilling to own up to the mistake once discovered. *See id.*; *see also United States v. Kearns*, 5 F.3d 1251, 1253-54 (9th Cir. 1993). Lopez's claim certainly does not satisfy the requirements of

§ 2255(h)(1) or (2), and so does not provide an independent basis for certifying her request for authorization to file a second or successive habeas application. Moreover, as we have shown, Lopez ultimately was not prejudiced. Thus exercise of the court's supervisory powers to dismiss the indictment is not warranted, even if we could certify Lopez's request to file a successive habeas petition, and even assuming the district court could invoke such powers which are "not typically considered to be an independent basis for post-conviction review." *See United States v. Ross*, 372 F.3d 1097, 1107, 1110 (9th Cir. 2004) ("Because no government misconduct prejudiced [defendant], dismissal of the indictment is not warranted."); *see also United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978) (concluding district court did not err in denying motion to dismiss the indictment where defendant showed no prejudice).

Although we find it troubling that the government's failure to disclose the Bailey memorandum to Lopez earlier had the effect of imposing on her the burdens of complying with §§ 2244 and 2255, particularly the strict standards governing second or successive habeas applications, there is no evidence that the prosecutors here were pursuing a strategy to put her in such an unfavorable position. Were there such evidence, this would be a different case.

## V.

For the reasons stated, we **VACATE** the district court's order denying Lopez's motion, and **REMAND** with instructions to dismiss for lack of jurisdiction. Lopez's appeal, construed as a motion for authorization to file a second or successive application, is **DENIED**.