# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 23, 2010

Lyle W. Cayce
Clerk

No. 09-10632

RICHARD THEODORE THARPE, JR.,

Petitioner-Appellant

v.

RICK THALER, Director, Texas Department of Criminal Justice, Correctional Institution Division,

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, GARZA, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant Richard Theodore Tharpe, Jr. pleaded guilty in state court to the felony offense of possession with intent to distribute cocaine. The trial court accepted his guilty plea, but instead of convicting Tharpe and imposing incarceration, the court deferred adjudicating his guilt and placed him on deferred-adjudication probation. After he violated his probation, however, the trial court convicted Tharpe and sentenced him to twenty-five years in prison. After exhausting his state court remedies, Tharpe filed this federal habeas corpus application, asserting claims related to both his deferred adjudication and his conviction and sentence.

No. 09-10632

The district court dismissed Tharpe's deferred-adjudication claims as time-barred, applying our holding in *Caldwell v. Dretke*[1] that the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) for bringing claims related to his deferred adjudication started to run when the state court's deferred-adjudication order became final. We granted Tharpe a certificate of appealability (COA) on the question whether, in light of the Supreme Court's holding in *Burton v. Stewart*, the district court correctly dismissed his deferred-adjudication claims as untimely.[2] We hold that, under the discrete circumstances of this case, our analysis in *Caldwell* is not affected by *Burton*, so we affirm the district court's dismissal of Tharpe's deferred-adjudication claims as untimely.

## I.  FACTS & PROCEEDINGS

### A.  Facts

Tharpe pleaded guilty in state court to the felony offense of possession with intent to distribute cocaine. On June 26, 2006, the trial court accepted Tharpe's guilty plea, but did not adjudicate his guilt or sentence him, instead placing him on deferred-adjudication probation. Tharpe wrote a letter to the court suggesting that he wanted to appeal the deferred-adjudication order. The trial court treated Tharpe's letter as a notice of appeal and submitted it to the state court of appeals. That court dismissed the appeal on January 11, 2007, concluding that Tharpe had waived his right to appeal and that the appeal was untimely as well.[3]

---

[1]  429 F.3d 521 (5th Cir. 2005).

[2]  549 U.S. 147 (2007) (per curiam).

[3]  *See Tharpe v. State*, No. 02-06-413-CR, 2007 WL 80015, at *1 (Tex. App.—Fort Worth Jan. 11, 2007, no pet.) (per curiam) (unpublished).

2

No. 09-10632

After the trial court ordered Tharpe's deferred adjudication, but before the appellate court dismissed his appeal, the State petitioned the trial court for an adjudication of guilt based on a violation of probation. In December 2006, the trial court held an adjudication hearing at which it determined that Tharpe had violated the conditions of his probation. That court then convicted Tharpe of the underlying drug offense and, on January 10, 2007, sentenced him to twenty-five years in prison. That same day, Tharpe filed a notice of appeal of that conviction and sentence. The judgment was affirmed on direct appeal,[4] and the Texas Court of Criminal Appeals refused discretionary review on January 16, 2008.

On January 31, 2008, Tharpe challenged both his deferred-adjudication and adjudication-of-guilt proceedings in a state post-conviction petition. On May 21, 2008, the Texas Court of Criminal Appeals denied those challenges without written order.

## B. Proceedings

Tharpe filed this federal habeas corpus application on June 2, 2008 pursuant to the AEDPA. He asserted nine claims, seven related to the deferred-adjudication order and two related to his subsequent conviction and sentence. The district court applied our holding in *Caldwell* and dismissed the seven deferred-adjudication claims as untimely under the AEDPA because more than one year had passed between the deferred-adjudication order becoming final and the filing of his federal petition,[5] even after taking into account the time tolled for state post-conviction proceedings.[6] The district court determined that the two

---

[4] *See Tharpe v. State*, No. 02-07-016-CR, 2007 WL 2563989, at *2 (Tex. App.—Fort Worth, Sep. 6, 2007, pet. ref'd) (per curiam) (unpublished).

[5] *See* 28 U.S.C. § 2244(d)(1).

[6] Because the AEDPA tolls the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), Tharpe's statute of limitations was tolled for the 111 days that his state post-conviction petition was pending between January 31 and May 21, 2008.

No. 09-10632

claims which addressed Tharpe's conviction and sentence were timely, but denied them on the merits.[7]

We granted a COA to determine whether, in light of the Supreme Court's holding in *Burton*, the district court correctly relied on *Caldwell* in dismissing the deferred-adjudication claims.

## II.  ANALYSIS

### A.  Standard of Review

The district court ruled as a matter of law that Tharpe's deferred-adjudication claims were time-barred, relying on our holding in *Caldwell* that final deferred-adjudication orders trigger the AEDPA's statute of limitations. We review questions of law de novo.[8]

### B.  Deferred-Adjudication Orders Under *Caldwell v. Dretke*

Under Texas law, a judge may defer the adjudication of guilt of particular defendants and place them on "community supervision" if they plead guilty or nolo contendere.[9] If such a defendant wishes to raise issues related to his guilty plea or deferred adjudication, he must do so on direct appeal from the deferred-adjudication order immediately after it is imposed; he may not wait until after he violates the terms of his probation and is held guilty.[10] If the defendant does not appeal at the time of deferred adjudication and thereafter violates a condition of his community supervision, however, the court holds a hearing to determine whether it should then proceed to impose a judgment of guilt. If the trial court holds such a hearing and convicts the defendant, it also sentences

---

[7] *See Tharpe v. Quarterman*, No. 4:08-CV-366-A, 2009 WL 1505195, at *4-5 (N.D. Tex. May 27, 2009).

[8] *See Bostick v. Quarterman*, 580 F.3d 303, 306 (5th Cir. 2009).

[9] *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a).

[10] *See Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999).

4

him.[11] Under these circumstances, "all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred."[12]

In *Caldwell*, we held that the AEDPA's statute of limitations starts to run for deferred-adjudication habeas claims when the deferred-adjudication order becomes final.[13] The AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1), provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the *judgment* of a State court"[14] and that it runs from "the date on which the *judgment* became *final* by the conclusion of direct review or the expiration of the time for seeking such review."[15] We concluded that "[t]he plain language of AEDPA, as well as its underlying purpose" require that we treat a deferred-adjudication order as a "judgment" under this provision as well as under 28 U.S.C. § 2254(a), which confers habeas jurisdiction on federal courts for state prisoners only if they are "in custody pursuant to the *judgment* of a State court."[16]

In the end, we held that, for a Texas prisoner who is subject to a deferred-adjudication order, the statute of limitations for a federal habeas application raising claims that address his deferred adjudication begins to run when his

---

[11]  *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(b).

[12]  *Id.*

[13]  *See* 429 F.3d at 530 & n.24. The case involved three petitioners, two of whom had pleaded guilty and were on deferred-adjudication probation and one of whom had pleaded not guilty but was convicted by a jury and placed on community supervision. *See id.* at 523-25. We only address the holding as it pertains to deferred-adjudication probation.

[14]  28 U.S.C. § 2244(d)(1) (emphasis added).

[15]  *Id.* § 2244(d)(1)(A) (emphases added).

[16]  *Caldwell*, 429 F.3d at 527; 28 U.S.C. § 2254(a) (emphasis added).

deferred-adjudication order becomes final, whether or not he is later convicted and sentenced.[17] The Supreme Court denied certiorari, with Justice Stevens "respecting" the denial because "the Court of Appeals expressly limited its holding to instances where a petitioner brings an untimely challenge to substantive issues relating to an original order of deferred adjudication probation."[18]

## C. *Burton v. Stewart*'s Consideration of "Final Judgments"

Subsequent to our holding in *Caldwell*, the Supreme Court in *Burton* had occasion to address the definition of "judgment" for purposes of § 2244. The petitioner in *Burton* had received two amended judgments because of resentencing issues. Thus, at successive times he was in custody pursuant to a 1994 judgment, then pursuant to a 1996 judgment, and then pursuant to a 1998 judgment.[19] In December 1998, the petitioner filed his first federal habeas application challenging aspects of his conviction that remained the same for all three judgments. That filing came after his 1998 judgment had been entered but before it became final. Then, after the 1998 judgment became final, the petitioner filed a second federal habeas application challenging his 1998 sentence. The Court had to determine, therefore, whether the petitioner's second habeas application, which challenged his sentence as part of the 1998 judgment, should be considered "second or successive" under the AEDPA in light of his first petition's challenge to his original conviction.

The *Burton* petitioner insisted that the 1994 judgment, which he thought he was challenging in his first habeas application, had to be considered a

---

[17] *See Caldwell*, 429 F.3d at 530.

[18] *Caldwell v. Quarterman*, 549 U.S. 970, 970 (2006) (Stevens, J., respecting the denial of the petition for writ of certiorari) (internal quotation marks omitted).

[19] *Burton*, 549 U.S. at 149-52.

different "judgment" from the 1998 judgment; otherwise, he argued, the AEDPA's statute of limitations would have barred him forever from challenging the 1994 conviction in federal court. The Supreme Court disagreed:

> Final judgment in a criminal case means sentence. The sentence is the judgment. Accordingly, [petitioner's] limitations period did not begin until both his conviction *and* sentence became final by the conclusion of direct review or the expiration of the time for seeking such review—which occurred well *after* [petitioner] filed his 1998 petition.[20]

The Court went on to explain that when the petitioner filed his first habeas application, he was in custody pursuant to the 1998 "judgment of a State court," which gave the district court habeas jurisdiction under § 2254, "even if, at that point, the 1998 judgment was not *final* for purposes of triggering the AEDPA's statute of limitations."[21] Therefore, held the Court, the petitioner's second habeas application, which attacked the same judgment, was successive and thus was barred by the AEDPA.[22]

## D. *Caldwell*'s Holding in Light of *Burton*

The Supreme Court in *Burton* putatively called the analysis of *Caldwell* into question by emphasizing that, for purposes of the AEDPA, the term "judgment" includes both the *conviction* and the *sentence*. This arguably blocks our deeming a deferred-adjudication order to be a "judgment."

Because *Burton* only addressed claims relating to a conviction *and* sentence, however, its analysis is logically limited to such claims. The *Burton*

---

[20] *Id.* at 156-57 (quotation marks omitted and emphases in original).

[21] *Id.* at 157 (emphasis added).

[22] *See id.* ("Burton neither sought nor received authorization from the Court of Appeals before filing his 2002 petition, a 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it."). *See also* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").

Court was asked specifically whether a habeas claim that challenges a *conviction* and another habeas claim that challenges a *sentence* involve two different "judgments" for AEDPA purposes. The Court answered "no." In contrast, the question we are asked in the instant case is whether a habeas claim that challenges a *deferred-adjudication order* and another habeas claim that challenges a *conviction and sentence* involve two different "judgments" for AEDPA purposes. Ours is an entirely different question, to which—consistent with our holding in *Caldwell*—we answer "yes." It follows, then, that in dealing with two entirely separate and distinct judgments—one a deferred-adjudication order and the other a judgment of conviction and sentence—we are dealing with two separate and distinct limitation periods under the AEDPA.

After the state trial court entered Tharpe's deferred-adjudication order on June 26, 2006, he was in custody pursuant to a state judgment—viz. that deferred-adjudication order—triggering our federal habeas jurisdiction under § 2254. Then, when the appeal of his deferred-adjudication order was dismissed by the State's highest court on January 11, 2007, that order, i.e., that judgment, became final, triggering the AEDPA's one-year limitations period within which Tharpe could challenge his deferred-adjudication order. With the inclusion of the time tolled for exhaustion of state remedies, Tharpe theoretically had until January 11, 2008 to file a federal habeas application challenging the June 26, 2006 deferred-adjudication order. Thus, when—on January 31, 2008—Tharpe first began his efforts to exhaust *state* habeas remedies on his deferred-adjudication claims, his one-year federal limitations period had already run. Consequently, those claims were appropriately found to be time-barred by the district court following the filing of Tharpe's *federal* habeas application on June 2, 2008; and we so hold.

Moreover, our holding here is wholly reconcilable with *Burton*. Inasmuch as Tharpe's deferred-adjudication order was a separate judgment from his

subsequent judgment of conviction and sentence, that subsequent judgment also constituted a "final judgment" per *Burton* and was thus unaffected, for purposes of the AEDPA's statute of limitations, by the earlier finality of his deferred-adjudication order. Like the petitioner in *Burton*, who was in custody—first pursuant to his 1994 judgment, then pursuant to his 1996 judgment, and then pursuant to his 1998 judgment—Tharpe was in custody first pursuant to the deferred-adjudication order and then pursuant to his January 10, 2007 judgment of conviction and sentence.[23] Therefore, Tharpe's habeas claims challenging the deferred-adjudication order were untimely because the AEDPA's statute of limitations had already run for those claims.[24]

## III. CONCLUSION

For the foregoing reasons, the district court's denial of Tharpe's seven deferred-adjudication claims as time-barred is AFFIRMED.

---

[23] Because Tharpe's deferred-adjudication order and his judgment of conviction and sentence were two separate and distinct "judgments," the AEDPA's time bar on the earlier order had no effect on the later judgment, which is why the district court was correct in addressing the merits of Tharpe's habeas claims regarding the later "final judgment" and not dismissing them as time-barred.

[24] Although not essential to our determination that Tharpe's deferred-adjudication claims were time-barred, Tharpe's claims were also flawed because they were filed when he was no longer in custody pursuant to the deferred-adjudication order.