Iaoshua MEADOWS, Petitioner,

v.

M.D. BITER, Respondent.

Case No. CV 12–9634–JST (PJW).

United States District Court, C.D. California.

Sept. 3, 2013.

---

Iaoshua Meadows, Delano, CA, pro se.

Shira Beth Seigle, CAAG–Office of the Attorney General, California Department of Justice, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING REPORT AND ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

JOSEPHINE STATON TUCKER, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition, records on file, and the Report and Recommendation of the United States Magistrate Judge. Further, the Court has engaged in a *de novo* review of those portions of the Report to which Petitioner has objected. The Court accepts the findings and recommendation of the Magistrate Judge.

Further, for the reasons stated in the Report and Recommendation, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right and therefore, a certificate of appealability is denied. *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b); *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PATRICK J. WALSH, United States Magistrate Judge.

This Report and Recommendation is submitted to the Hon. Josephine Staton Tucker, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that the Petition be denied and the action be dismissed with prejudice.

I.

## SUMMARY OF PROCEEDINGS

A. *State Court Proceedings*

In July 2009, Petitioner was convicted by a jury in Los Angeles County Superior Court of three counts of residential burglary and one count of willfully evading a police officer. (Clerk's Transcript ("CT") 160–63.) The court determined that Petitioner had two prior strike convictions under California's Three Strikes law and sentenced him to 130 years to life in prison. (CT 219.)

Petitioner appealed to the California Court of Appeal, which remanded the matter to the trial court for re-sentencing. (Lodged Document No. 3.) On February 3, 2011, the trial court sentenced him to 44 years and four months in prison. (Lodged Document No. 4 at 25.) Thereafter, Petitioner did not appeal or petition for review in the California Supreme Court. (Petition for Writ of Habeas Corpus ("Petition") at 3.) Instead, 15 months later, in May 2012, he filed a habeas corpus petition in the California Supreme Court, which was denied on August 8, 2012. (Lodged Document Nos. 5–6.)

B. *Federal Court Proceedings*

█ On October 25, 2012, Petitioner, proceeding pro se, filed the instant Petition in this court, pursuant to 28 U.S.C. § 2254, raising the following claims:

1. Newly discovered evidence demonstrates that he is innocent.

2. Trial counsel was ineffective for failing to investigate juror misconduct.

(Petition at 5.[1])

Respondent now moves to dismiss the Petition on the ground that it is untimely. Petitioner opposes the motion.

## II.

## DISCUSSION

### A. The Petition Was Filed More Than A Year After His Conviction Became Final

State prisoners seeking to challenge state convictions in federal habeas corpus proceedings are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d). Here, Petitioner's conviction became final on April 4, 2011—60 days after he was re-sentenced and the time for filing a notice of appeal had expired. *See* Cal. R. Ct. 8.308(a); *Burton v. Stewart*, 549 U.S. 147, 156–57, 127 S.Ct. 793, 166 L.Ed.2d 628 (2007) (holding judgment becomes final when time for challenging conviction and sentence expires). Therefore, the statute of limitations expired one year later, on April 4, 2012. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir.2001). Petitioner did not file his federal Petition until October 2012, more than six months after that deadline. Accordingly, absent tolling, the Petition is untimely and must be dismissed.

### B. Statutory Tolling

■ The statute of limitations is tolled during the time "a properly filed applica-

tion for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is not tolled between the time a petitioner's conviction becomes final and the date he files his first collateral challenge in state court. *See Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir.2007).

Here, Petitioner does not claim that he is entitled to statutory tolling. Nor does the record support any such claim. Petitioner filed his only state habeas petition on May 25, 2012, after the statute of limitations had expired. The filing of this petition, therefore, could not have tolled the statute of limitations. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding filing of state petition after limitations period expired cannot revive statute of limitations and has no tolling effect). Accordingly, statutory tolling does not save the Petition.[2]

### C. Equitable Tolling

■ The statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010). Petitioner, however, does not claim entitlement to equitable tolling and the Court has not uncovered any basis to support such a claim.

### D. Newly Discovered Evidence

■ In general, the statute of limitations begins to run when a petitioner's

---

1. Pursuant to the "mailbox rule" for prisoner filings, a prisoner's pleadings are deemed filed on the day they are delivered to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 275–76, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In this case, the Court has used the date Petitioner signed the Petition, and presumably delivered it to prison officials for mailing, as the filing date for his federal Petition.

2. Although Petitioner dated his state habeas petition and an accompanying "Proof of Service by Mail" form May 1, 2012, he makes clear on the proof of service that he mailed the petition to the state supreme court on May 25, 2012. (*See* Lodgment No. 5.) For that reason, the Court uses May 25, 2012 as the filing date. Regardless of which date the court uses, however, the petition was filed after the statute of limitations had expired.

state conviction becomes final. 28 U.S.C. § 2244. There is an exception to this rule for claims that are grounded on facts that are not known to a petitioner until after his conviction becomes final. 28 U.S.C. § 2244(d)(1)(D). Under this exception, the limitations period does not begin to run until the new evidence is discovered or should have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D).

■■■ Petitioner has not argued that he is entitled to a later start date of the statute of limitations. Nevertheless, the Court notes that he contends that he is innocent based on newly discovered evidence, i.e., a written statement from co-defendant Andre Piolet in which Piolet claims that Christopher Avery, now deceased, committed the burglaries with him. (Petition, Exh. A.) According to Piolet, he and Avery asked Petitioner that morning if they could use his car and Petitioner agreed. Thereafter, Piolet claims, he and Avery burglarized the homes. Based on this evidence, the Court considers the plausibility of a later start date based on the newly discovered evidence.[3]

The bottom line is that, although Piolet's written statement may be new, the factual predicate underlying the claim, i.e., that Avery, not Petitioner, accompanied Piolet on the burglaries, is not new. Brandon Crawford, a long-time friend of Petitioner's, testified at trial that, on the morning of the burglaries, he was with Petitioner when Piolet and Avery asked Petitioner if they could borrow his car to "handle some business." (Reporter's Transcript ("RT") 1522–23.) Petitioner agreed. (RT 1533.)

Crawford testified that, when he and Petitioner returned to Petitioner's home later that day, Petitioner's car was gone. (RT 1523–25.) Thus, even accepting Piolet's statement at face value, it is not enough to support a claim of newly discovered evidence because the factual predicate underlying the claim was known to Petitioner and his counsel at the time of trial. *See Moreland v. Felker,* 2012 WL 1416611, at *1 (C.D.Cal. Apr. 20, 2012) (holding statute did not begin to run when the defendant obtained declaration from witness because the defendant had "been aware all along of his actual innocence theory"); *Mora v. Almager,* 2012 WL 845920, at *4 (C.D.Cal. Jan. 23, 2012) ("[U]nder § 2244(d)(1)(D), the limitation period begins to run from the date the factual predicate of the claim could have been discovered, not from the date evidence to support the claim is obtained."); *Wyatt v. McDonald,* 2011 WL 6100611, at *5 (E.D.Cal. Dec. 7, 2011) ("Under § 2244(d)(1)(D) the statute of limitations for the filing of a federal habeas petition runs from the date a petitioner is put on notice of the facts which would support a claim for habeas relief, not from the date on which he has in his possession evidence to support such a claim."). In fact, Petitioner's counsel argued to the jury in closing argument that Crawford's testimony established that it was Avery, not Petitioner, who had burglarized the homes with Piolet that day. (RT 1602, 1605–06.) Thus, to the extent that Petitioner could have argued that he was entitled to a later start date based on the fact that he did not "discover" Piolet's statement until November 2011, that argument is rejected.[4]

---

**3.** Piolet was initially charged with Petitioner in the burglaries. (CT 84–88.) He was not, however, tried with Petitioner. Though the record does not indicate what happened in his case, presumably, Piolet was convicted

since he has now signed a statement that he committed the burglaries. (Petition, Exh. A.)

**4.** As for Petitioner's claim that counsel was ineffective because he failed to raise a claim of juror misconduct, clearly, Petitioner was

E. *Actual Innocence*

Petitioner contends that the new evidence from Piolet proves that he is innocent and, thus, the Court should overlook his late filing. For the following reason, this argument is rejected.

██ Just last week, the United States Supreme Court held for the first time that there is an actual innocence exception to the statute of limitations. *McQuiggin v. Perkins,* —— U.S. ——, 133 S.Ct. 1924, 1927–28, 185 L.Ed.2d 1019 (2013). In order to qualify for this exception, however, a petitioner "must produce sufficient proof of his actual innocence to bring him within the narrow class of cases ... implicating a fundamental miscarriage of justice." *Lee v. Lampert,* 653 F.3d 929, 937 (9th Cir. 2011) (en banc) (internal quotation marks omitted). A valid claim of actual innocence requires that a petitioner introduce new, reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, demonstrating that it is more likely than not that no reasonable juror would have found him guilty. *Schlup v. Delo,* 513 U.S. 298, 324, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Lee,* 653 F.3d at 938.

██ Petitioner has made no such showing here. He suggests that the statement purportedly written by co-defendant Piolet more than four years after the crimes— alleging that it was Avery who burglarized the homes with Piolet, not Petitioner— proves his innocence. (*See* Petition, Exh. A.) The Court disagrees. To begin with, Piolet's statement was not made under oath or signed under penalty of perjury. This causes the Court to look askance at the statement. *See Estrada v. Hedgepeth,* 2010 WL 3069998, at *14 (C.D.Cal. May 26, 2010) (finding post-trial statements

supporting actual innocence claim were not reliable because they were unsworn); *Ruiz v. Gonzalez,* 2009 WL 3233558, at *3 (C.D.Cal. Oct. 2, 2009) (same). Further, it implicates someone who is dead, which also raises concerns. *McQuiggin,* 133 S.Ct. at 1935–36 (dismissing government's fears that actual innocence gateway could be abused by prisoners who wait until witnesses are dead to raise habeas claims, noting the timing of such a petition "should seriously undermine the credibility of the actual-innocence claim"). In addition, the statement presumably comes after Piolet was already convicted of committing the burglaries and he has nothing to lose. And neither Piolet nor Petitioner explain why it was not presented earlier. *See Herrera v. Collins,* 506 U.S. 390, 423, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (finding affidavits made many years after trial—purporting to exculpate a convicted prisoner by offering a new version of events—are "not uncommon" and "are to be treated with a fair degree of skepticism").

Finally, Piolet's statement is undermined by the evidence at trial. At trial, two witnesses testified that they saw Petitioner in the area of the burglaries at the time of the burglaries. (RT 623–31, 803–07, 1257). Though Brandon Crawford testified that Avery had been with Piolet when Piolet allegedly borrowed Petitioner's car on the day of the robberies, (RT 1522–23, 1533), Crawford's testimony was suspect, in part, because he had not come forward until the last day of trial, despite the fact that he knew that Petitioner, who was a friend of his, had been in jail for more than a year. (RT 1501–02, 1528–30.) Moreover, Crawford himself was a convicted felon. (RT 1518.) And, as Crawford explained at trial, there was no way to

aware of the facts underlying that claim at the time of trial, (RT 2401–02), and he does not

argue otherwise in his brief. (Points and Authorities in Support of Traverse.)

corroborate Crawford's story, at least not with Avery, because Avery had been killed eight months earlier. (RT 1526–27.) Finally, Crawford admitted that Avery looked nothing like Petitioner (RT 1530), which undermined any claim that the witnesses had been mistaken when they identified Petitioner.

Thus, for all these reasons, the Court finds that Petitioner has not presented trustworthy and reliable evidence sufficient to undermine the Court's confidence in the verdict. *See Schlup,* 513 U.S. at 316, 115 S.Ct. 851. As such, he is not entitled to pass through the actual innocence gateway. *See Shumway v. Payne,* 223 F.3d 982, 990 (9th Cir.2000) (noting claims of actual innocence have been rejected in virtually every case due to the rarity of credible and reliable newly discovered evidence).

## III.

### RECOMMENDATION

For these reasons, IT IS RECOMMENDED that the Court issue an Order (1) accepting this Report and Recommendation and (2) directing that Judgment be entered denying the Petition and dismissing the case with prejudice.[5]

DATED: June 3, 2012.

---

5. The Court is not inclined to issue a certificate of appealability in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). If Petitioner believes a certificate should issue, he should explain why in his objections.