# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

GABRIELE ELIZABETH LOPEZ, aka
Gabriele Elizabeth Koenig, Nee
Konig,
            *Defendant-Appellant.*

No. 07-35389
D.C. Nos.
CV-05-00084-JLQ
CR-02-00127-JLQ

ORDER AND
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Justin L. Quackenbush, District Judge, Presiding

Argued and Submitted
April 8, 2008—Seattle, Washington

Filed August 18, 2009

Before: Raymond C. Fisher, Ronald M. Gould and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Fisher

11165

## COUNSEL

James A. McDevitt, United States Attorney; Stephanie Whitaker (argued), Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Beth Mary Bollinger, Spokane, Washington, for the defendant-appellant.

Tarik Adlai, Pasadena, California, for amici curiae National Association of Criminal Defense Attorneys and the Federal Public Defender for the Central District of California.

## ORDER

We previously granted Defendant-Appellant Gabrielle Elizabeth Lopez's Petition for Rehearing. The opinion filed July 16, 2008 and amended July 29, 2008, *see United States v. Lopez*, 534 F.3d 1027 (9th Cir. 2008), is withdrawn. A superseding opinion will be filed concurrently with this order. Fur-

ther petitions for rehearing or petitions for rehearing en banc may be filed. Defendant-Appellant's petition for rehearing en banc, filed August 13, 2008, is denied as moot.

---

## OPINION

FISHER, Circuit Judge:

Gabriele Lopez, a.k.a. Gabriele Koenig ("Lopez"), filed a federal habeas corpus motion in the district court seeking to vacate her drug conviction because the government withheld until long after her trial potentially damaging credibility information about one of the government's principal witnesses, in violation of the government's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963).[1] The district court rejected the government's argument that the court lacked jurisdiction to hear the motion because it was barred by 28 U.S.C. § 2255(h) as "second or successive" and denied the motion on its merits.[2] The appeal in this case thus presents a

---

[1]After we published an opinion in this case, Lopez filed a petition for rehearing and rehearing en banc, and we granted the National Association of Criminal Defense Attorneys and the Federal Public Defender for the Central District of California permission to file a brief as *amici curiae* in support of Lopez's petition. On October 30, 2008, we granted Lopez's petition for rehearing. We now withdraw our earlier opinion and replace it with this amended opinion.

[2]Section 2255(h) states:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).

troublesome circumstance involving the interplay between the government's failure to make a timely disclosure of *Brady* information and the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. §§ 2244, 2255, which, in the interest of finality, impose significant burdens on defendants who try to raise new claims in "second or successive" habeas petitions.[3]

In *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2853-54 (2007), a capital case, the Supreme Court held that competency-to-be-executed claims based on *Ford v. Wainwright*, 477 U.S. 399 (1986), were exempt from AEDPA's "second or successive" requirements. Noting that "*Ford*-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition," the Court concluded that "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented" in a case where a second-in-time habeas petition raises a "*Ford*-based incompetency claim filed as soon as that claim is ripe." *Panetti*, 127 S. Ct. at 2852-53. The Court identified three considerations that supported its conclusion: (1) the implications for habeas practice of reading "second or successive" literally for such claims, (2) whether barring such claims would advance the policies behind AEDPA's passage and (3) the Court's pre- and post-AEDPA habeas jurisprudence, including the common law abuse-of-the-writ doctrine.

As we shall explain more fully, although the Court's reasoning in *Panetti* is potentially applicable to other types of habeas claims, we do not believe *Panetti* can be read to support a construction of AEDPA that *expands* federal courts' pre-AEDPA ability to reach the merits of claims presented in second-in-time habeas petitions. Lopez has not demonstrated the evidence the government failed to disclose is material to

---

[3]All statutory provisions cited in this opinion refer to Title 28 of the United States Code, unless otherwise stated.

her guilt or innocence, *see United States v. Bagley*, 473 U.S. 667, 674-75 (1985) (explaining petitioner must establish suppressed evidence's materiality to guilt or innocence to prevail on *Brady* claim), so her second-in-time claim would have been barred under the pre-AEDPA abuse-of-the-writ doctrine. Accordingly, we reject Lopez's and amici's argument that *Panetti* supports exempting her second-in-time *Brady* claim from § 2255(h)'s gatekeeping provisions, which expressly address in § 2255(h)(1) the circumstances under which courts may entertain "second or successive" claims based on "newly discovered evidence." We decline to resolve the more difficult question whether federal courts have jurisdiction to consider a subset of meritorious *Brady* claims that federal courts would have considered on the merits under the pre-AEDPA abuse-of-the-writ doctrine but that would be barred under a literal reading of "second or successive" in § 2255(h)(1).

Lopez's claim as presented was subject to § 2255(h)(1)'s gatekeeping requirements, so she was required to obtain permission from the court of appeals before filing her § 2255 motion in district court. Because she failed to obtain our permission, the district court did not have jurisdiction to reach the merits of her *Brady* claim. Even if we construe Lopez's appeal as a belated request to us for authorization to file her motion, we would deny certification because the newly discovered evidence would not be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found her guilty of the offense. *See* § 2255(h)(1). We also conclude the government's conduct, albeit troublesome, was not "so grossly shocking and so outrageous as to violate the universal sense of justice," *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (internal quotation marks and citations omitted), that her conviction must be vacated and the indictment dismissed.

## I.

Lopez was indicted in May 2002 on several charges of possession of cocaine base with intent to distribute. She was tried

together with Elvis Singh and James Evans, with whom she lived in a house in Spokane, Washington. Two informants, David Palmer ("Palmer") — who emerges as the central figure in this appeal — and Janie Arambula ("Arambula"), testified on behalf of the government.

Palmer testified about an occasion on April 9, 2002, when he went to the defendants' house in Spokane to buy crack cocaine with two other participants. The jury heard Palmer's recorded conversations with these participants regarding their drug purchase inside the house. Palmer testified that he did not see Lopez on that occasion and had never met her at any other time. Defense counsel cross-examined Palmer about a variety of issues, such as whether he had used or presently used drugs and the payment for his work as an informant.

During the trial, a case agent testified that he had taken Palmer's Drug Enforcement Administration ("DEA") file to the United States Attorney's Office and that Assistant United States Attorney Tom Rice ("Rice") had spoken with Agent Shelby Smith ("Agent Smith") of the local DEA. The case agent further testified that Rice had written a note to one of the government's trial attorneys that there was no *Brady* material in the file. Frank Cikutovich, counsel for one of the co-defendants, told the court he was concerned about whether the government had disclosed all *Brady* material about Palmer and requested that the court review Palmer's file for *Brady* material. The court declined, saying it was the responsibility of the United States Attorney's Office, not the court, to do so.

As Lopez learned several years later, on June 6, 2002 — two months before her trial — Lieutenant Chandler Bailey ("Lt. Bailey") of the Spokane Police Department Drug Task Force had called Agent Smith to tell him that the City and County of Spokane would no longer be using Palmer as a confidential source in controlled drug buys because he was "unreliable." Lt. Bailey had learned that Palmer had been sexually involved with at least one woman who was the subject

of a drug investigation conducted by the Spokane Police Department, that some officers believed Palmer had used investigative funds to buy services from prostitutes and that Palmer usually sought out women when he chose his own targets for investigation. Although Lt. Bailey had prepared a memorandum discussing the allegations that Palmer was "unreliable" (the "Bailey memorandum"), he had not sent a copy to Agent Smith and the memorandum was not in the file at the time Rice inspected it. There is no evidence that Agent Smith relayed the information from the conversation he had with Lt. Bailey to Rice or Assistant United States Attorney Earl Hicks, who was then in charge of the prosecution of Lopez and her co-defendants. Nor is there evidence that the government attorneys involved in the cases asked the pertinent government agents whether they had any personal knowledge concerning the credibility of the government witnesses, or any other *Brady* information, as opposed to merely looking in Palmer's file.

The defense completed its cross-examination of Palmer without being informed that the City and County of Spokane were no longer using Palmer because he was considered unreliable. Palmer's testimony did not directly inculpate Lopez in any drug transaction, and at the close of evidence the court instructed the jury that the testimony of an informant should be examined with greater care than the testimony of an unpaid witness.

Another informant, Arambula, testified about a wire-recorded controlled purchase of cocaine base she made on April 18, 2002 from Lopez's co-defendant Singh, in which Lopez participated. This was not the controlled purchase about which Palmer testified. Arambula's testimony was that she placed a consensually monitored and recorded telephone call to Singh to arrange to purchase a half ounce of crack cocaine. When she arrived at the house, Lopez answered the door and led her to a bedroom where Singh was on the bed. Arambula asked to buy a half ounce of crack cocaine, she and

Singh discussed the price, and then Lopez retrieved and weighed the crack cocaine for Arambula. Lopez gave her the crack cocaine, and Arambula then laid the money on Singh's chest. Agent Beaumont testified about this transaction, explaining that he was with Arambula during her telephone call with Singh and that he conducted surveillance during the controlled purchase. The tape of the telephone call and the transmitter wire recording of the controlled buy were admitted into evidence and played for the jury.

The jury found the defendants guilty of the cocaine base charges. Specifically, the jury found Lopez guilty of two counts of violation of 21 U.S.C. § 841(a)(1) (Count 5 — knowingly and unlawfully distributing a mixture or substance containing more than five grams of cocaine base; and Count 6 — knowingly and unlawfully possessing with intent to distribute a mixture or substance containing more than 50 grams of cocaine base).

The district court set aside the jury's verdict on Count 6, finding insufficient evidence to support a conviction. It found, however, there was clear and convincing evidence to support the jury verdict on Count 5. The court sentenced Lopez to the mandatory minimum term of five years. On Lopez's direct appeal, we affirmed her conviction and sentence in an unpublished disposition. *See United States v. Singh*, 94 F. App'x 511, 514 (9th Cir. 2004).

In March 2005, Lopez filed her first motion to set aside, vacate or correct her sentence under § 2255, claiming ineffective assistance of counsel, a violation of her Sixth Amendment right to an impartial jury, a due process violation and a sentence in violation of *United States v. Booker*, 543 U.S. 220 (2005). The district court denied the motion. Then, in 2006, the new *Brady* information regarding Palmer came to light in a different case, *United States v. Heit*, E. D. Wash. No. CR-05-6028-EFS, in which Palmer was an informant-witness for the government. Upon learning about the Bailey memoran-

dum and its negative information about Palmer, the government's counsel in *Heit* disclosed it to the defense counsel in that case, who in turn disclosed it to Lopez's counsel and her co-defendants' counsel. At some time during the prosecution of the Heit case, the Bailey memorandum was put in Palmer's file.

Meanwhile, the district court in *Heit* held extensive pretrial evidentiary hearings on the defendant's motion to dismiss based on the government's alleged outrageous behavior in using Palmer as a confidential informant. Although the court recognized that "Palmer's testimony [was] critical to the Government as he [was] the only 'government agent' to have personally talked with [the defendant]," it nevertheless denied Heit's motion and precluded her from introducing evidence about uncharged allegations of Palmer's sexual misconduct and being "black balled" by government agencies. The court found that any relevance the alleged sexual incidents might have had regarding Palmer's credibility or motives was substantially outweighed by their prejudicial value, especially in light of other information Heit could utilize to impeach Palmer.

In the case before us, Lopez filed her § 2255 motion in the district court in November 2006 to vacate her conviction and dismiss the indictment with prejudice, based on the government's alleged outrageous behavior in failing to furnish damaging impeachment information concerning Palmer as required under *Brady*. Rejecting the government's argument that Lopez's motion was an impermissible second or successive motion that had not been certified by this court under § 2255(h), the district court denied her motion on the merits, finding that the impeachment evidence would not have materially affected the guilty verdict on Count 5. This appeal followed.

## II.

Lopez contends the district court erred in finding the government's failure to disclose the information about Palmer

contained in the Bailey memorandum did not violate Brady. In determining whether there has been a *Brady* violation, we consider whether the evidence was: (1) favorable to the accused, (2) suppressed by the government and (3) material to the guilt or innocence of the defendant. *See United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc). Evidence is favorable if it is exculpatory or impeaches a prosecution witness, and suppression occurs when favorable evidence known to police or the prosecution is not disclosed, either willfully or inadvertently. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Hovey v. Ayers*, 458 F.3d 892, 916 (9th Cir. 2006). Evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *see also Kyles v. Whitley*, 514 U.S. 419, 434-36 (1995). "A 'reasonable probability' of a different result [exists] when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). If the petitioner establishes all three elements, the challenged conviction or sentence must be set aside. *See generally Brady*, 373 U.S. 83.

This is Lopez's second § 2255 motion challenging her conviction, however, so before we can address the merits of her *Brady* claim we must first decide whether AEDPA restricts her ability to bring this motion. AEDPA imposes significant limitations on the power of federal courts to award relief to prisoners who file "second or successive" habeas petitions, *see Cooper v. Calderon*, 274 F.3d 1270, 1272-73 (9th Cir. 2001) (per curiam), although it nowhere defines the term "second or successive," *see Henderson v. Lampert*, 396 F.3d 1049, 1053 (9th Cir. 2005). We review de novo the district court's finding that Lopez's § 2255 motion was not "second or successive" under AEDPA. *See id.* at 1052.

## A.

Prior to AEDPA's enactment in 1996, "a complex and evolving body of equitable principles informed and controlled

by historical usage, statutory developments, and judicial decisions" known as the abuse-of-the-writ doctrine guided federal courts' consideration of second-in-time habeas petitions. *McClesky v. Zant*, 499 U.S. 467, 489 (1991). In *McClesky*, the Supreme Court clarified its "oblique" attempts to define the abuse-of-the-writ doctrine. *Id.* at 477. "[A] petitioner may abuse the writ by failing to raise a claim [in a prior petition] through inexcusable neglect" or by deliberately abandoning a claim raised in an earlier petition. *Id.* at 489. To establish excusable neglect, the petitioner had to make two showings: "cause for failing to raise [the claim earlier] and prejudice therefrom." *Id.* at 494. "For cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *Id.* at 497; *see also id.* at 498 (explaining cause inquiry turns on "whether petitioner possessed, or by reasonable means could have obtained, a sufficient basis to allege a claim in the first petition"). "Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains." *Id.* at 494 (internal quotation marks omitted). Even if "petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* at 494-95. If petitioner failed to establish cause and prejudice or satisfy the miscarriage-of-justice exception, the court had to dismiss the petition as an abuse of the writ. *See id.* at 487.

Although the Supreme Court has not conducted an abuse-of-the-writ analysis of a *Brady* claim, it did address a procedurally defaulted *Brady* claim in *Strickler v. Greene*, 527 U.S. 263 (1999). Its analysis is instructive, because the Court derived the cause and prejudice components of the abuse-of-the-writ doctrine from its procedural default jurisprudence. *See McClesky*, 499 U.S. at 493-94. In *Strickler*, the Court held that petitioner was unable to establish prejudice because the suppressed evidence was not material under *Brady*. *See id.* at

296 ("[P]etitioner has not shown that there is a reasonable probability that his conviction or sentence would have been different had these materials been disclosed. He therefore cannot show materiality under *Brady* or prejudice from his failure to raise the claim earlier.").[4] Applying *Strickler*'s holding regarding prejudice to pre-AEDPA abuse-of-the-writ doctrine, federal habeas courts could reach the merits of *Brady* claims in second-in-time petitions only if the evidence was material under *Brady*.[5]

## B.

In 1996, Congress enacted AEDPA, codifying the judicially established principles reflected in the abuse-of-the-writ doctrine and further restricting the availability of relief to habeas petitioners. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996). AEDPA's scant legislative history, consisting of three paragraphs in a single conference committee report, suggests Congress was concerned primarily with federal habeas review of capital cases. *See* H.R.Rep. No. 104-518, at 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944 (stating that the bill "incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases").

---

[4]*Strickler* also addressed the "cause" prong of the cause-and-prejudice analysis, holding that the government's suppression of the evidence constituted sufficient cause. *See* 527 U.S. at 289. We need not address whether or to what extent *Strickler*'s cause analysis would be applicable to the pre-AEDPA abuse-of-the-writ doctrine generally, or to *Brady* claims such as the one at issue in this case.

[5]Although it may seem strange to determine whether a procedurally barred *Brady* claim can be considered on the merits through a cause and prejudice inquiry that necessarily involves addressing the merits of the *Brady* claim itself, *see Strickler*, 527 U.S. at 282 (noting "cause and prejudice parallel two of the three components of the alleged *Brady* violation itself"), the Court concluded such an approach was doctrinally sound, *see id.* at 296 (holding petitioner could not establish prejudice because he could not establish materiality under *Brady*).

**[1]** Section 2244(a) governs when a court may entertain a § 2255 motion (challenging a federal conviction) after an earlier § 2255 motion challenging the federal conviction has already been decided:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

Section 2255(h) in turn provides:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain:
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Accordingly, a petitioner must move for authorization from this court to file a "second or successive" § 2255 motion in the district court, and the motion will be denied unless the petitioner makes a prima facie showing that satisfies the § 2255(h)(1) gatekeeping requirements.[6] *See Cooper*, 274

---

[6]Section 2244(b) governs habeas petitions challenging state convictions under § 2254 and establishes virtually identical restrictions on "second or

F.3d at 1273. If the petitioner does not first obtain our authorization, the district court lacks jurisdiction to consider the second or successive application. *See Burton v. Stewart*, 549 U.S. 147, 152-53 (2007) (per curiam).

Reading these provisions literally, every second-in-time § 2255 motion would be barred unless the petitioner first obtains authorization from the court of appeals. Because the court of appeals' permission is contingent upon the claim's satisfaction of AEDPA's gatekeeping provisions, every second-in-time habeas claim would be barred unless it establishes by clear and convincing evidence that no reasonable factfinder would have *convicted* the prisoner of the underlying offense or that the petition is based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(2), § 2244(b)(2)(A).

**[2]** The Supreme Court, however, has not always read "second or successive" literally. In *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998), the Court held a second-in-time § 2254 petition raising a *Ford* competency-to-be-executed claim that had been raised in an earlier petition but dismissed as unripe was not "second or successive" under AEDPA and should instead be "treated in the same manner as the claim of a petitioner who returns to a federal habeas court after exhausting state remedies." Just as a federal habeas court cannot adjudicate unexhausted claims presented in an initial federal habeas petition, it cannot resolve a premature *Ford* claim, so failing to allow petitioner to proceed with the now-ripe *Ford* claim "would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the pris-

---

successive" petitions, *see* § 2244(b)(2)(B)(ii), with the added requirement that petitioner establish that the factual predicate of newly discovered claims could not have been discovered earlier through due diligence, *see* § 2244(b)(2)(B)(i), which parallels the "cause" requirement for procedurally barred claims, *see Murray v. Carrier*, 477 U.S. 478, 487-88 (1986).

oner from ever obtaining federal habeas review." *Id.* at 645. The Court also explained that the state's reliance on *Felker*, 518 U.S. at 664 (stating that AEDPA's "restrictions on successive petitions constitute a modified res judicata rule, a restraint on what used to be called in habeas corpus practice 'abuse of the writ' "), was misplaced: the *Ford* claim "would not be barred under any form of res judicata," because the petitioner "brought his claim in a timely fashion, and it has not been ripe for resolution until now." *Martinez-Villareal*, 523 U.S. at 645. The Court left open, however, whether a filing would be "second or successive" under AEDPA "where a prisoner raises a *Ford* claim for the first time in a petition filed after the federal courts have already rejected the prisoner's initial habeas application." *Id.* at 645 n.*.

In *Slack v. Daniel*, 529 U.S. 473, 486 (2000), applying pre-AEDPA law, the Court construed the meaning of the term "second or successive" in former Rule 9(b) of the Rules Governing Habeas Corpus Proceedings, although it "[did] not suggest the definition of second or successive would be different under AEDPA." After explaining Rule 9(b) "incorporates our prior decisions regarding successive petitions and abuse of the writ" and "[t]he phrase 'second or successive petition' is a term of art given substance in our prior habeas corpus cases," *id.*, the Court held a § 2254 petition filed after an initial petition had been dismissed for containing both exhausted and unexhausted claims was not "second or successive," even if it contained claims not included in the first petition, *see id.* at 487. The initial petition had been dismissed "before the district court adjudicated any claims," so the second petition was "treated as 'any other first petition.' " *Id.*

**[3]** In *Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2853 (2007), the Court resolved the question it had left open in *Martinez-Villareal* and held a second-in-time § 2254 petition raising a *Ford* claim was not "second or successive," even though petitioner had not included that claim in the original petition. The Court noted that, "*Ford*-based incompe-

tency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition," and that applying AEDPA's "second or successive" bar to such *Ford* claims raised in a second-in-time habeas petition would require "conscientious defense attorneys . . . to file unripe (and, in many cases, meritless) *Ford* claims in each and every" habeas application. *Id.* at 2852. The Court solved this "dilemma" by looking to the pre-AEDPA abuse-of-the-writ standard:

> The phrase "second or successive" is not self-defining. It takes its full meaning from our case law, including decisions predating the enactment of [AEDPA]. The Court has declined to interpret "second or successive" as referring to all § 2254 applications filed second or successively in time, even when the later filings address a state-court judgment already challenged in a prior § 2254 application.

*Id.* The Court cited three considerations supporting its conclusion that Congress did not intend to subject unripe *Ford* claims to AEDPA's gatekeeping provisions: (1) the implications for habeas practice of adopting a literal interpretation of "second or successive," (2) the purposes of AEDPA and (3) the Court's prior habeas corpus decisions, including those applying the abuse-of-the-writ doctrine.[7] *See id.* at 2853-54. The Court cautioned against interpreting AEDPA's "second or successive" provisions in a way that would foreclose any

---

[7]The government is therefore mistaken that *Burton v. Stewart*, 549 U.S. 147, limited the relevance of pre-AEDPA abuse-of-the writ decisions. In *Burton*, the Supreme Court did not question our reliance on abuse-of-the-writ considerations, *see id.* at 797 ("We assume for the purposes of this case, without deciding, that the Ninth Circuit's 'legitimate excuse' approach to determining whether a petition is 'second or successive' is correct."), but rather held our application of that doctrine was inconsistent with the Court's decisions governing the precise circumstances at issue, *see id. Panetti* thus answered the question *Burton* left open by expressly relying on abuse-of-the-writ considerations for unripe *Ford* claims.

federal review of a constitutional claim, or otherwise lead to perverse results, absent a clear indication that Congress intended that result. *See id.* at 2854. Usually "a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar," but the Court was reluctant to construe the statute "in a manner that would require unripe (and, often, factually unsupported) claims to be raised as a mere formality [in the first petition]." *Id.* at 2855.[8]

## C.

[4] The Supreme Court has not decided whether the considerations it identified in *Panetti* apply to other types of second-in-time claims or whether second-in-time *Brady* claims are "second or successive" under AEDPA. These are also open questions in our circuit.[9] Lopez and amici argue the considerations in *Panetti* apply with equal force to *Brady* claims, so all *Brady* claims should be exempt from AEDPA's gatekeeping provisions. The government, on the other hand, contends all second-in-time *Brady* claims are subject to AEDPA's gatekeeping provisions, because they are "second or succes-

---

[8]*Panetti* ratified the view of the majority of the circuit courts that the meaning of "second or successive" is informed by the abuse-of-the-writ doctrine. *See, e.g., United States v. Barrett*, 178 F.3d 34, 42-44 (1st Cir. 1999); *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002); *Benchoff v. Calleran*, 404 F.3d 812, 817 (3d Cir. 2005); *In re Cain*, 137 F.3d 234, 235-36 (5th Cir. 1998) (per curiam); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006); *Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001); *Allen v. Ornoski*, 435 F.3d 946, 956 (9th Cir. 2006); *Reeves v. Little*, 120 F.3d 1136, 1138-39 (10th Cir. 1997) (per curiam); *Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003).

[9]*Cooper v. Woodford*, 358 F.3d 1117, 1119 (9th Cir. 2004) (en banc) (order), involved a capital petitioner's request to file a second-in-time petition containing a *Brady* claim. We did not squarely address whether the petition was "second or successive" under AEDPA; instead, we declined to decide whether the abuse-of-the-writ standard or the "stricter" AEDPA standard applied, holding that, "[u]nder either standard," the defendant was "entitled to file a second-or-successive application." *Id.* at 1119-20.

sive" claims that rely on "newly discovered evidence," *see* § 2255(h)(1).

We agree with Lopez and amici that *Panetti* is relevant to this inquiry. *Panetti* recognized that "second or successive" is a term of art that may not always be read literally. *See Panetti*, 127 S. Ct. at 2853. The considerations the Court identified in support of its holding are not specifically limited to *Ford* claims, *see id.* at 2853-54, and therefore must be considered in deciding whether other types of claims that do not survive a literal reading of AEDPA's gatekeeping requirements may nonetheless be addressed on the merits. Accordingly, we consider whether *Panetti* supports exempting Lopez's second-in-time *Brady* claim from § 2255(h).

Given the nature of *Brady* claims, petitioners often may not be at fault for failing to raise the claim in their first habeas petition. It is the prosecutor who violates *Brady*'s disclosure obligations by not providing favorable evidence to the defense, and that prosecutorial error may not surface until petitioner's first habeas petition has already been resolved. Such prosecutorial error, however, does not rise to the level of a constitutional violation unless petitioner demonstrates a threshold level of prejudice: the undisclosed evidence must be material. *See Strickler*, 527 U.S. at 281-82. Regardless of whether a *Brady* claim is raised in a first petition or a second-in-time petition, petitioner can prevail and obtain a new trial only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *see also Kyles*, 514 U.S. at 434 (holding "a showing of materiality does not require demonstration by [even] a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal"; rather, withheld evidence is material if, in its absence, the defendant did not receive a fair trial, "understood as a trial resulting in a verdict worthy of confidence").

Before AEDPA's passage, if the prosecution failed to disclose the potential *Brady* evidence until after a first habeas petition had been resolved, the petitioner could then raise the *Brady* claim in a second-in-time petition so long as it was not barred by the abuse-of-the-writ doctrine. Applying the prejudice analysis in *Strickler*, federal courts could reach the merits of second-in-time *Brady* claims only when the suppressed evidence was material, and would have had to dismiss as an abuse of the writ meritless claims that did not establish materiality. *See Strickler*, 527 U.S. at 296. Thus, before AEDPA, federal courts generally would have been able to reach the merits and remedy *every* meritorious *Brady* claim presented in a second-in-time petition when the "cause" prong of the abuse-of-the-writ doctrine was also satisfied.

In contrast, under a literal reading of "second or successive" in AEDPA, federal courts would lack jurisdiction to consider any second-in-time *Brady* claims unless petitioner demonstrates by clear and convincing evidence that no reasonable factfinder would have found petitioner guilty of the offense had the newly disclosed evidence been available at trial. *See* § 2255(h)(1). If § 2255(h) applies literally to every second-in-time *Brady* claim, federal courts would be unable to resolve an entire subset of meritorious *Brady* claims: those where petitioner can show the suppressed evidence establishes a *reasonable probability* of a different result and is therefore material under *Brady*, but cannot, under § 2255(h)(1)'s more demanding prejudice standard, show that the evidence establishes by *clear and convincing evidence* that no reasonable juror would have voted to convict petitioner.

Lopez and amici are therefore correct that the broad rule the government advocates, under which *all* second-in-time *Brady* claims would be subject to § 2255(h)(1), would completely foreclose federal review of some meritorious claims and reward prosecutors for failing to meet their constitutional

disclosure obligations under *Brady*.[10] This would seem a perverse result and a departure from the Supreme Court's abuse-of-the-writ jurisprudence, *see Strickler*, 527 U.S. at 296. Barring these claims would promote finality — one of AEDPA's purposes — but it would do so only at the expense of foreclosing all federal review of meritorious claims that petitioner could not have presented to a federal court any sooner — certainly not an AEDPA goal. *Cf. Panetti*, 127 S. Ct. at 2854 (explaining AEDPA's concern for finality was not implicated because federal courts are not "able to resolve a petitioner's *Ford* claim before execution is imminent").

[5] *Panetti*, however, does not provide an easy answer to how federal courts should treat meritorious second-in-time *Brady* claims under AEDPA. Although the considerations in *Panetti* seem relevant, the Court's reasoning may not translate to second-in-time *Brady* claims, for at least two reasons. As the government has argued, § 2255(h)(1) contains an express statutory standard for dealing with "second or successive" claims based on "newly discovered evidence." *Brady* claims, by their nature, necessarily rest on newly discovered evidence. Congress' expressed intent to limit the circumstances in which a court can entertain a petition based on newly discovered evidence may therefore distinguish *Brady* claims from the "unusual posture presented" by *Ford* claims, *Panetti*, 127 S. Ct. at 2853.[11] Additionally, a literal application of

---

[10]This concern is not purely hypothetical. *Cf.* Ciaran McEvoy, *Withholding Evidence Causes Worry*, Daily Journal, July 2, 2009, at 1 (describing several federal criminal prosecutions that "crumbled after it was revealed authorities failed to disclose key information that could have tainted witnesses' credibility"); Carrie Johnson, *After Stevens Case, Justice Dept. Corruption Unit in Disarray*, Wash. Post, June 18, 2009, at A3 (describing failures by prosecutors in Department of Justice's Public Integrity Section to disclose evidence favorable to defendants).

[11]We note, however, that *Panetti* itself involved evidence that was not available when petitioner filed his first federal habeas petition, *compare* 127 S. Ct. at 2849 (noting denial of petitioner's first § 2254 petition, which did not argue that petitioner's mental illness rendered him incompe-

§ 2255(h)(1) would not bar all second-in-time *Brady* claims from proceeding to a merits determination, because some meritorious *Brady* claims will establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense, *see* § 2255(h)(1), thereby satisfying one of the exceptions to the bar on "second or successive" claims that is expressly provided by statute. Perhaps the differing effects that § 2255(h)(1) would have on meritorious *Brady* claims — barring some and allowing others to proceed — is a "clear indication" that Congress intended to restrict the type of *Brady* violations for which courts may grant relief in second-in-time petitions. *Panetti*, 127 S. Ct. at 2854 (internal quotation marks omitted).

Nonetheless, even if *Panetti* could be viewed as supporting an exemption from AEDPA's gatekeeping provisions for meritorious *Brady* claims, such a rule would not benefit Lopez, because we conclude (1) that *Brady* claims that fail to establish materiality (and therefore lack merit) are subject to

tent to be executed, became final in 2003) *with id.* at 2850-51 (noting evidence supporting petitioner's competency-to-be-executed claim that was not available until 2004: namely, a letter and a declaration from a psychologist and law professor who had interviewed petitioner while he was on death row on February 3, 2004, and whose testimony, according to petitioner, demonstrated that petitioner did not understand the reasons he was about to be executed). Thus, because it is the government's own failure to disclose the evidence that brings the *Brady* claim within the "newly discovered" category, it is not clear that such previously unavailable evidence should not come within *Panetti*'s rationale. On the other hand, *Panetti* did not turn on whether petitioner had adduced new evidence, but rather on the fact that petitioner's *Ford* claim was not ripe until shortly before he brought his second habeas petition. *See id.* at 2853. Thus, because the Court in *Panetti* did not consider the significance of the new evidence supporting the second-in-time claim, but rather focused on whether the *Ford* claim could have been adjudicated at the time the first habeas petition was dismissed, it is not clear that a *Brady* claim, which squarely relies on "newly discovered evidence," comes within *Panetti*'s rationale. We do not need to reach this issue, however, for the reasons discussed in detail below.

AEDPA's gatekeeping provisions and (2) that Lopez has failed to establish materiality.[12] Whatever the consequence that a literal application of § 2255(h)(1) would have on meritorious *Brady* claims, Lopez's and amici's argument that *Panetti* supports exempting *all* second-in-time *Brady* claims from AEDPA's gatekeeping provisions is untenable. Second-in-time *Brady* claims that did not establish materiality would have been barred under the abuse-of-the-writ doctrine pre-AEDPA. *See Strickler*, 527 U.S. at 296. Exempting all second-in-time *Brady* claims from AEDPA's gatekeeping provisions would therefore allow some claims to proceed to a merits determination that would have been barred under the abuse-of-the-writ doctrine. *Contra Felker*, 518 U.S. at 664 (holding that AEDPA "codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners"). Although the Supreme Court has never explained with precision which aspects of the abuse-of-the-writ doctrine AEDPA codified without modification and which aspects it strengthened, *see id.*, no court has ever held AEDPA *expands* the availability of habeas relief or allows federal courts to consider claims that would have been barred under the abuse-of-the-writ doctrine, *cf. Sanders v. United States*, 373 U.S. 1, 11-12 (1963) (declining to read congressional modification to habeas statutes as preventing courts from dismissing claims that would have been barred as abuse of the writ). Moreover, construing nonmaterial *Brady*

---

[12]Although it would be simpler to say it is irrelevant whether Lopez's claim is "second or successive" under AEDPA because it will ultimately fail on the merits, we may not do so. Section 2255(h) is a jurisdictional bar, and we may not assume our jurisdiction, complicated though the jurisdictional inquiry may be, in order to resolve the case on the merits, straightforward though the merits inquiry may be. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding federal courts cannot assume their jurisdiction in order to resolve case on the merits "because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers"); *see also id.* ("Without jurisdiction the court cannot proceed at all in any cause." (internal quotation marks omitted)).

claims as "second or successive" is consistent with *Panetti*'s analytical approach: it would not be perverse to bar such claims, given their lack of merit; precluding federal review of such claims would conform with the Supreme Court's pre-AEDPA jurisprudence; and it would be fully consistent with AEDPA's goals of promoting finality, comity and federalism to bar petitioners from raising such meritless claims in second-in-time petitions. *See Panetti*, 127 S. Ct. at 2853-54.

**[6]** We therefore hold that *Brady* claims are not categorically exempt from AEDPA's gatekeeping provisions and that second-in-time *Brady* claims that do not establish materiality of the suppressed evidence are subject to dismissal under § 2255(h)(1). This conclusion is consistent with our post-AEDPA decisions, in which we have explained that the abuse-of-the-writ doctrine "is now codified by . . . . AEDPA," *see Calderon v. U.S. Dist. Ct.*, 163 F.3d 530, 538 (9th Cir. 1998) (en banc) (citing *Felker*, 518 U.S. at 664), abrogated on other grounds by *Woodford v. Garceau*, 538 U.S. 202 (2003), and that "second or successive" in AEDPA is a " 'term of art . . . derivative of the "abuse-of-the-writ" doctrine developed in pre-AEDPA cases,' " *see Allen v. Ornoski*, 435 F.3d 946, 956 (9th Cir. 2006) (quoting *Hill v. Alaska*, 297 F.3d 895, 897-98 (9th Cir. 2002)). None of our post-AEDPA decisions have suggested federal courts are now free to reach the merits of claims that would have been barred as an abuse of the writ.[13]

---

[13]Our post-AEDPA decisions have sometimes focused only on the cause inquiry when summarizing the abuse-of-the-writ doctrine. *See, e.g.*, *Woods v. Carey*, 525 F.3d 886, 888 (9th Cir. 2008) ("Generally, a new petition is 'second or successive' if it raises claims that were or could have been adjudicated on their merits in an earlier petition." (internal quotation marks omitted)). But, as we have also recognized, establishing a legitimate excuse for not bringing the claim sooner is necessary but not itself sufficient: "If the petitioner can show cause for his failure to raise the claim, he then must demonstrate 'actual prejudice resulting from the errors of which he complains.' " *Allen*, 435 F.3d at 956 (internal quotation marks omitted) (quoting *McClesky*, 499 U.S. at 494).

**[7]** Accordingly, we need not, and do not, resolve the more difficult question whether *all* second-in-time *Brady* claims must satisfy AEDPA's gatekeeping requirements, because Lopez's second-in-time *Brady* claim falls into the category of nonmaterial *Brady* claims that we have concluded is subject to § 2255(h)(1). *Cf. Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 184 (1999) ("It is . . . an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground."). First, assuming the defense was allowed to use the information to impeach Palmer, his testimony did not directly inculpate Lopez.[14] He did not testify about Lopez at all or about the drug transaction at issue in Count 5, so the weight given his testimony would not likely have affected the verdict against Lopez, regardless of whether he was impeached as thoroughly as possible or not. Second, the district court allowed extensive cross-examination of Palmer that gave the jury information to appraise his credibility and motivations. Third, even if Lopez is correct that there may have been some kind of spillover effect from Palmer's testimony on the jury's view of Arambula's testimony about the transaction in which Lopez was involved, there was strong evidence against Lopez on Count 5 in addition to Arambula's testimony, including the tape the jury heard recording Lopez's participation in the April 18, 2002 drug transaction, supported by Agent Beaumont's testimony. In the face of such strong evidence of Lopez's guilt independent of Palmer's testimony, we conclude there is not a reasonable likelihood that introduction of the Bailey memorandum would have altered the outcome of this case. *See Bagley*, 473 U.S. at 682. Because Lopez's second-in-time *Brady* claim would have been barred before AEDPA's passage, her claim is not exempt from AEDPA's gatekeeping provisions.

---

[14]As the *Heit* case illustrates, the Bailey memorandum or its contents might not have been allowed as impeachment evidence even if the government had disclosed the Palmer information to defense counsel before trial.

Regardless of whether some *Brady* claims are exempt from AEDPA's gatekeeping requirements, Lopez's claim is not. Consequently, the district court lacked jurisdiction to consider her claim, because we had not authorized her to file it. *See* § 2255(h).[15]

To summarize, we reject Lopez's and amici's argument that *all* second-in-time *Brady* claims are exempt from § 2255(h)(1). At a minimum, *Brady* claims that would have been barred under the abuse-of-the-writ doctrine are subject to AEDPA's gatekeeping provisions. Under this limited holding, Lopez's claim must satisfy § 2255(h)'s gatekeeping provisions, because she has not established materiality under *Brady* and her claim would therefore have been barred as an abuse of the writ. Thus, we leave open the more difficult question whether *Panetti* supports an exemption from § 2255(h)(1)'s gatekeeping provisions for meritorious *Brady* claims that would have been reviewable under the pre-AEDPA prejudice standard.

---

[15]Given the narrow basis upon which we resolve this case, we express no opinion on the Eleventh Circuit's recent decision in *Tompkins v. Sec., Dep't of Corrections*, 557 F.3d 1257, 1259-60 (11th Cir. 2009) (per curiam) (holding all second-in-time *Brady* claims are subject to AEDPA's gatekeeping provisions), or the Fourth Circuit's decision in *Evans v. Smith*, 220 F.3d 306, 323 (4th Cir. 2000) (same). Additionally, because we have concluded Lopez's claim lacks merit, we express no opinion on amici's argument that construing AEDPA to foreclose any federal review of meritorious *Brady* claims would raise constitutional concerns, *see, e.g.*, *Crater v. Galaza*, 491 F.3d 1119, 1125 (9th Cir. 2007) (holding § 2254(d)(1)'s restriction of habeas relief to state court decisions that are contrary to or unreasonable application of clearly established federal law is not unconstitutional suspension of writ, because it modifies preconditions for relief rather than foreclosing all jurisdiction to review claim); *Allen*, 435 F.3d at 960-61 & n.11 (noting § 2254(d)(1)'s restriction "merely limits the source of clearly established law that the Article III court may consider" and does not impermissibly alter content of that law in violation of Article III or separation of power principles).

### III.

**[8]** Although we construe Lopez's appeal as a request that we authorize her to file a second or successive § 2255 motion, *see Cooper*, 274 F.3d at 1275, we must deny her request because her claim does not satisfy the § 2255(h) gatekeeping requirements. Lopez's *Brady* claim obviously does not rely on a new rule of constitutional law, *see* § 2255(h)(2), and, having failed to carry the lesser burden of establishing materiality under *Brady*, she cannot satisfy § 2255(h)(1)'s higher prejudice standard.

### IV.

**[9]** Finally, Lopez argues the government's conduct in failing to disclose the Palmer information was "so grossly shocking and so outrageous as to violate the universal sense of justice," *Restrepo*, 930 F.2d at 712 (internal quotation marks omitted), thus violating due process and warranting outright dismissal of the indictment, *see United States v. Kojayan*, 8 F.3d 1315, 1324-25 (9th Cir. 1993). We are concerned about the government's failure to discover and disclose the information in a timely fashion, but the circumstances do not rise to the level of outrageousness. There is no evidence the government wilfully withheld the *Brady* material, lied about such material or was unwilling to own up to the mistake once discovered. *Compare United States v. Kearns*, 5 F.3d 1251, 1253-54 (9th Cir. 1993) *with Kojayan*, 8 F.3d at 1324-25. Moreover, Lopez ultimately was not prejudiced by the misconduct. *See United States v. Ross*, 372 F.3d 1097, 1110 (9th Cir. 2004) ("Because no government misconduct prejudiced [defendant], dismissal of the indictment is not warranted."); *United States v. Owen*, 580 F.2d 365, 367 (9th Cir. 1978) (holding defendant must demonstrate prejudice to justify dismissal of indictment for outrageous prosecutorial misconduct). Thus, exercise of the district court's supervisory powers to dismiss the indictment is not warranted, even assuming the district court could have invoked such powers in post-

conviction proceedings, *see Ross*, 372 F.3d at 1107 (noting court's supervisory powers are "not typically considered to be an independent basis for post-conviction review" (citing *McNabb v. United States*, 318 U.S. 332, 340 (1943))).

[10] Although we find it troubling that the government's failure to disclose the Bailey memorandum to Lopez earlier prevented her from bringing the *Brady* claim in her first § 2255 motion and thereby imposed on her the burdens of complying with § 2255(h), there is no evidence that the prosecutors here were pursuing a strategy to put her in such an unfavorable position. Were there such evidence, this would be a different case. *Cf. United States v. Stevens*, No. 08-cr-231 (D.D.C. filed April 7, 2009) (order granting motion to set aside verdict and dismiss indictment).

## V.

For the reasons stated, we **VACATE** the district court's order denying Lopez's motion and **REMAND** with instructions to dismiss for lack of jurisdiction. Lopez's appeal, construed as a motion for authorization to file a second or successive application, is **DENIED**.