# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1878

_____

Odell DePriest Crawford

*Plaintiff - Appellant*

v.

State of Minnesota

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 17, 2012
Filed: November 7, 2012

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Odell Crawford was convicted in state court of three counts of criminal sexual conduct for raping a thirteen year old girl. After filing postconviction motions and a habeas petition under 28 U.S.C. § 2254, Crawford discovered that a crime lab had improperly handled his DNA sample. He filed this new habeas petition, arguing that the state's failure to disclose the error violated his constitutional rights. The district

court[1] concluded that it lacked jurisdiction to consider a second or successive petition because Crawford had failed to obtain preauthorization, but it granted a certificate of appealability on whether preauthorization was required. We conclude that Crawford's § 2254 petition is second or successive and deny his motion for preauthorization.

## I.

Crawford was charged in Minnesota state court with three counts of criminal sexual conduct related to the rape of his girlfriend's thirteen year old daughter S.H. At trial S.H. testified that she awoke one night to find Crawford in her bed with a knife. She screamed, but Crawford threatened to kill her, pulled down her pants, and raped her. S.H. went to her neighbor's house and reported that she had been raped. She was taken to a hospital where she was examined and her genitals were swabbed for potential DNA evidence. Police later obtained DNA samples from Crawford.

An analyst from the Hennepin County Sheriff's crime lab testified that rudimentary DNA testing had indicated that Crawford's sperm was on S.H.'s pajama bottoms and underwear. The analyst stated that DNA testing of the collected vaginal and perineal swabs had also indicated the presence of Crawford's DNA. A Bureau of Criminal Apprehension (BCA) analyst who had tested DNA sent by the sheriff's crime lab testified that sperm cells found on the vaginal swabs collected from S.H. matched Crawford's DNA. The jury returned a guilty verdict on all three counts of criminal sexual conduct, and Crawford was sentenced to 144 months in prison.

Crawford directly appealed his conviction to the Minnesota Court of Appeals which affirmed, and the Minnesota Supreme Court denied review. Crawford then filed an unsuccessful pro se postconviction petition and pro se appeals.

---

[1] The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

-2-

In June 2004 Crawford filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his detention. He contended that his trial counsel had improperly waived his right to a speedy trial, that the district court had erred in overruling certain objections at trial, and that his trial counsel had been ineffective. The district court concluded that it was precluded from considering claims that had been resolved in his direct appeal "on an adequate and independent state law ground" and that Crawford had not demonstrated that his "representation fell below the objective standard of reasonableness and that it adversely affected the trial." Crawford v. Minnesota, No. 04-2822, 2005 WL 1593038, at *1–2 (D. Minn. July 1, 2005). The petition was dismissed with prejudice, id. at *3, and we affirmed. Crawford v. Minnesota, 498 F.3d 851, 852 (8th Cir. 2007).

In November 2006 an evidentiary hearing in an unrelated case in Hennepin County District Court revealed a BCA error related to Crawford's DNA sample. While no transcript of that hearing is available, counsel stipulated that the testimony established that a BCA analyst had "put Crawford's DNA into [another] sample." There was no evidence at that hearing that Crawford's own DNA sample had been corrupted, however.

Crawford had already been petitioning for state habeas relief when he learned of the BCA error and he argued in state court that he could collaterally attack his conviction based on the newly discovered DNA evidence. The Minnesota Court of Appeals concluded in his appeal from the denial of state habeas relief that there was no indication "that there was any error with respect to DNA evidence in [Crawford's] case." Crawford v. Fabian, No. 07-2410, 2008 WL 4850071, at *2 (Minn. Ct. App. Nov. 20, 2008). The "newly discovered evidence [was] insufficient to show any appreciable likelihood that the DNA evidence in [Crawford's] trial was tainted and that a collateral attack on [Crawford's] conviction will be successful." Id.

Crawford then petitioned in state court for a new trial. He contended that under Brady v. Maryland, 373 U.S. 83, 87 (1963), the prosecution's intentional withholding of evidence had violated his due process rights. A BCA analyst then reviewed the original DNA testing and submitted an affidavit stating that no error had "taint[ed]" the results in Crawford's criminal case. The state court denied Crawford's petition and the Minnesota Court of appeals affirmed, concluding that Crawford could not show that any new evidence was material. Crawford v. Minnesota, No. 09-1373, 2010 WL 2899131, at *3 (Minn. Ct. App. July 27, 2010). S.H. had given detailed testimony about the rape, alternative DNA testing revealed "semen matching the DNA profile of Crawford on S.H.'s pajama bottoms and vaginal swabs," and the record was devoid of evidence that the testing error had affected Crawford's DNA sample. Id.

Crawford filed another petition for habeas corpus under 28 U.S.C. § 2254, arguing that his constitutional rights had been violated by the prosecution's failure to disclose the DNA error and that he had been denied a fair trial. The district court denied Crawford's petition and dismissed the case without prejudice, concluding his petition was "second or successive" under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See 28 U.S.C. § 2244. As a result Crawford was required to obtain preauthorization from the court of appeals before his petition could be considered. Id. § 2244(b)(3). The district court issued a certificate of appealability on "whether Crawford's 28 U.S.C. § 2254 claims arising from evidence previously concealed by the state are subject to AEDPA's preauthorization requirement under 28 U.S.C. § 2244(b)(3)."

Crawford requests preauthorization to submit his § 2254 petition and appeals the district court's determination that his petition was second or successive.

-4-

II.

Crawford's second habeas petition alleges that his due process rights were violated and he was denied a fair trial by the prosecution's failure to disclose that a BCA analyst had inserted his DNA into someone else's sample. To succeed on his claim under Brady v. Maryland, 373 U.S. 83, 87 (1963), Crawford must show evidence favorable to him which was suppressed by the state. Strickler v. Greene, 527 U.S. 263, 281–82 (1999). Crawford also must establish that the evidence would have been material to the outcome of his trial where there had been credible testimony from the rape victim and a second DNA test had connected him to the criminal sexual conduct of which he was convicted. Id. at 289–96.

Since Crawford had previously filed a § 2254 petition, there is a preliminary question whether he is required to obtain preauthorization before the district court has jurisdiction to address the merits of his Brady claim. If a petition is second or successive, the court of appeals has a gatekeeping function to decide whether to grant preauthorization for it to be considered. 28 U.S.C. § 2244(b)(3)(A); Felker v. Turpin, 518 U.S. 651, 657 (1996). Under AEDPA the court of appeals may authorize a second or successive petition if "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence" and "the facts underlying the claim . . . would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B).

AEDPA does not define what is meant by second or successive, but the Supreme Court has stated that the term does not encompass all applications "filed second or successively in time." Panetti v. Quarterman, 551 U.S. 930, 943–44 (2007). It is a term of art that incorporates the abuse of the writ doctrine from before AEDPA's enactment. Slack v. McDaniel, 529 U.S. 473, 486 (2000). AEDPA then codified "some of the pre-existing limits on successive petitions" and imposed

additional restrictions on habeas relief. Felker, 518 U.S. at 664. It did not "expand[] the availability of habeas relief or allow[] federal courts to consider claims that would have been barred under the abuse-of-the-writ doctrine." United States v. Lopez, 577 F.3d 1053, 1066 (9th Cir. 2009) (emphasis in original). A petitioner "may abuse the writ by failing to raise a claim [in a prior petition] through inexcusable neglect" or "by raising a claim in a subsequent petition that he could have raised in his first." McCleskey v. Zant, 499 U.S. 467, 489 (1991).

The district court dismissed Crawford's habeas petition without prejudice as second or successive. It concluded that preauthorization is required for Brady claims in second habeas petitions. While treating Crawford's petition as second or successive would bring finality to a state judgment, the court did not want to "encourage misbehavior" by prosecutors or other state actors. In the end it concluded that AEDPA's preauthorization procedures provide Crawford with federal review of his claim.

We review de novo the district court's determination that Crawford's petition is second or successive. Williams v. Norris, 461 F.3d 999, 1001 (8th Cir. 2006). Crawford argues that the district court erred in concluding that his habeas petition requires preauthorization. He cites Panetti, 551 U.S. at 945, where the Supreme Court concluded that a petitioner's claim under Ford v. Wainwright, 477 U.S. 399, 409–10 (1986), that he was incompetent to be executed, was exempt from AEDPA's second or successive preauthorization requirements. Crawford argues that he is similarly not required to obtain preauthorization for his petition to bring his Brady claim because prosecutors withheld information from him and he thus could not have discovered his claim until after his first habeas petition was filed.

Courts agree that nonmaterial Brady claims in second habeas petitions are second or successive under AEDPA and therefore require preauthorization. See Lopez, 577 F.3d at 1060. The Ninth Circuit concluded in Lopez that the abuse of the

writ doctrine precluded federal courts from reviewing claims in second habeas petitions unless the petitioner established prejudice. Id. Nonmaterial Brady claims are not prejudicial and therefore may be seen as an abuse of the writ because they lack a reasonable probability that a conviction or sentence would have been different if suppressed materials had been disclosed. Id. (citing McCleskey, 499 U.S. at 477 and Strickler, 527 U.S. at 296). Recognizing that AEDPA does not allow federal courts "to consider claims that would have been barred under the abuse-of-the-writ doctrine," the court concluded that nonmaterial Brady claims in second habeas petitions are second or successive. Id. at 1066. Since the Brady claim at issue in Lopez was nonmaterial, the court did not need to consider "whether all second-in-time Brady claims must satisfy AEDPA's gatekeeping requirements." Id. at 1067 (emphasis in original).

Several courts have concluded that all Brady claims in second § 2254 petitions require preauthorization regardless of materiality. In Evans v. Smith, 220 F.3d 306, 324 (4th Cir. 2000), the Fourth Circuit reasoned that such habeas claims are second or successive because that serves "AEDPA's purpose of achieving timely, final resolutions of claims in the interests of justice." AEDPA itself provides an opportunity to seek authorization for a second or successive petition to assert a Brady claim based on newly discovered evidence. Id. at 323. Similarly, in Tompkins v. Secretary Department of Corrections, 557 F.3d 1257, 1260 (11th Cir. 2009) (per curiam), the Eleventh Circuit concluded that all Brady claims in a second habeas petition are second or successive because they "can be and routinely are raised in initial habeas petitions." See also Quezada v. Smith, 624 F.3d 514, 520–22 (2d Cir. 2010). While these courts have concluded that all Brady claims should be classified as second or successive, there is no dispute that at least nonmaterial Brady claims in second habeas petitions require preauthorization.

Crawford's habeas petition raises only a nonmaterial Brady claim because no evidence suggests that there is a "reasonable probability" that evidence about the

BCA's error would have altered the outcome of his case. Strickler, 527 U.S. at 291 (emphasis omitted). The trial testimony by S.H. established that Crawford went into her bed, threatened to kill her, and then raped her. Alternative DNA testing completed at another crime lab found semen on S.H.'s pajama bottoms and vaginal swabs matching Crawford's DNA profile. Even if the BCA analyst's testimony had been impeached or excluded at trial, unimpeached DNA evidence would still have connected Crawford to the crimes. The Minnesota Court of Appeals concluded that "the [questioned] DNA evidence . . . was unnecessary to support the conviction," see Crawford, 2010 WL 2899131, at *2, a factual determination which is given a presumption of correctness under 28 U.S.C. § 2254(e)(1). Suppression of the evidence about which Crawford complains would therefore not have had a reasonable probability of altering the verdict.

Crawford has not shown any prejudice to the outcome of his trial from the improper handling of one DNA test, and without prejudice his claim would have been an abuse of the writ even before AEDPA's enactment. Lopez, 577 F.3d at 1066. Claims raised in second habeas petitions which would have been barred under the abuse of the writ doctrine are now classified as second or successive. Id. Classifying Crawford's nonmaterial Brady claim as second or successive is consistent with AEDPA's goals of "finality, prompt adjudication, and federalism." Evans, 220 F.3d at 321. While some courts have concluded that all Brady claims in second habeas petitions are second or successive regardless of their materiality, that question is not presented here because in this case there was overwhelming evidence of Crawford's guilt including an alternate DNA test. We therefore conclude that Crawford's second habeas petition is second or successive and that he was required to obtain preauthorization before the district court could review the merits of his petition.

Crawford has also moved for preauthorization to bring his habeas petition in the district court. 28 U.S.C. § 2244(b)(3)(A). Preauthorization is appropriate if the claim's factual predicate could not have been discovered previously through the

-8-

exercise of due diligence and "the facts underlying the claim . . . would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2244(b)(2)(B).  Crawford argues that clear and convincing evidence establishes that, but for the prosecution's withholding of evidence, no reasonable factfinder would have found him guilty.  We disagree.  Since Crawford cannot establish that his Brady claim would have been material to the outcome in his case, he cannot satisfy the more stringent test of showing that clear and convincing evidence exists that no reasonable factfinder would have found him guilty even if the DNA evidence from the BCA had not been used against him.  We therefore deny his motion for preauthorization.

## III.

We conclude that the district court did not err in classifying Crawford's second habeas petition as second or successive for the reasons stated, and we deny Crawford's motion for the required preauthorization.

_____